Bardwell *v.* Purrington.

OSCAR BARDWELL *vs.* SAMUEL PURRINGTON.

An instrument executed by overseers of the poor to bind J. S. as an apprentice under the Gen. Sts. *c.* 111, § 4, which purports to bind him from its date until a day named, "when the said J. S. will arrive at the age of twenty-one years, during which time the said J. S. shall faithfully serve," is not wholly void because under the rule of law excluding fractions of a day in computation of time J. S. will become of full age on the day next preceding that so named, but binds him during his minority.

In an action to recover for work done for the defendant by an apprentice bound to the plaintiff by an instrument executed by overseers of the poor under the Gen. Sts. *c.* 111, § 4, which recites that the minor's father is "actually chargeable" to the town as having a lawful settlement therein, such recital is *primâ facie* evidence of the fact recited.

A parent with whose consent relief is furnished by a town to some of his minor children, by reason of his having a lawful settlement in the town and not being able to support them, is actually chargeable to the town so as to enable the overseers of the poor to bind his minor children as apprentices or servants, under the Gen. Sts. *c.* 111, § 4.

The mere fact that a person, who employed an absconding apprentice, paid him for his services, affords no defence to an action brought against such person by the master for their value.

CONTRACT on an account annexed for services rendered by George W. Hayden as a farm laborer to the defendant for thirty-six days in the year 1868 at the rate of one dollar per day. Writ dated July 19, 1869. The answer denied any right of the plaintiff to recover for work done by said George, and alleged that, if the plaintiff should prove that said George did any work for the defendant, then the defendant had paid for the same.

At the trial in the superior court, before *Brigham*, C. J., it appeared that George W. Hayden was a son of Samuel Hayden, and was born on September 8, 1852; and the plaintiff introduced

in evidence an indenture made by and between him and the se-lectmen of Shelburne on April 5, 1861, which set forth "that the said overseers of the poor have bound and do hereby bind George W., a minor son of Samuel Hayden, a poor person lawfully set-tled in said Shelburne and actually chargeable thereto, unto the said Bardwell, to follow the business of farming or agriculture, and with him to serve from the day of this indenture until the eighth day of September in the year eighteen hundred and sev-enty-three, when the said George W. will arrive at the age of twenty-one years, during which time the said George W. the said Bardwell shall faithfully serve;" and wherein the plaintiff cove-nanted to faithfully instruct the said George in the business of farming, and during all said term to provide for his comfortable support in sickness and health, and cause him to be taught in reading, writing, ciphering and "such other branches as are ordi-narily taught in common schools," and to pay him $100 upon his coming of age. It was admitted that a duplicate of this inden-ture was duly filed with the town clerk of Shelburne.

The plaintiff also put in evidence showing that the apprentice lived with him, under the indenture, from its date until June 7, 1868, when he left the plaintiff's house and went to a house in Coleraine, where his father and mother and some of his brothers and sisters were living; that he then went with his father to the defendant's farm, and hired himself to the defendant to do farm work at the rate of a dollar a day; and that he remained in the defendant's employment some thirty days, when he left it and was employed elsewhere, and was found and taken home by the plaintiff a few months afterwards. "On intimation from the presiding judge, in answer to the plaintiff's inquiry, that no fur-ther proof than the indenture was necessary in the first instance to establish the plaintiff's case on the point of the father of the apprentice being chargeable on the town," the plaintiff here rested his case.

The defendant then, being called as a witness, testified that he did not know that George W. Hayden was an apprentice, at the time when he hired him, (but in the course of the trial there was contradictory evidence on this point,) and that the plaintiff never

gave him notice that he claimed the boy's wages as due to himself under the indenture, until after the boy had left the defendant's service. Thereupon the defendant was asked by his counsel, whether he had paid the boy; but, upon objection of the plaintiff to the question, the judge excluded it. It was in dispute, and was one of the questions argued to the jury, whether the plaintiff used due diligence to reclaim the boy after he left his house.

Samuel Hayden was a witness for the defendant, and testified "that at the time the indenture was made neither he nor his wife was actually a charge upon the town of Shelburne, or had been so chargeable for four or five months before." The plaintiff, in reply, called Pliny Fisk, one of the overseers of the poor of Shelburne, who signed the indenture, "to establish the fact that the father of the boy was a charge upon said town at said time." The defendant objected, on the ground that it was incumbent on the plaintiff to establish that fact as part of his case in chief, and that it was not matter of reply; but the judge ruled "that the act of the overseers as evidenced by the instrument raised a presumption that the father was actually chargeable to the town at that time, sufficient to make a *primâ facie* case, and it was not incumbent on the plaintiff to establish the fact in the first instance by other proof." Fisk then testified "that from March 1860 to March 1861 Samuel Hayden had been a charge on the town of Shelburne; that in March 1861, about two weeks before the making of the indenture, said Samuel had of his own motion and at his own expense removed to live in the town of Coleraine, and was no longer a charge on the town of Shelburne; that he took with him his wife and three children; that he left two minor daughters in Shelburne, who had been put out by the overseers of Shelburne in families at the expense of the town; and that they remained in such families on such expense to the town from June 1860 until the June after the making of the indenture, when they rejoined their parents in Coleraine." It also appeared that the town of Shelburne paid the plaintiff one dollar per week for the support of George W. Hayden for about a year, up to April 1, 1861; and that when the indenture was made the plaintiff remitted all claim for his support from the 1st to the 5th of April

1861, although the boy remained in his charge, under an arrangement with the overseers, until the making of the indenture. There was no evidence tending to contradict Fisk's testimony, except the said testimony of Samuel Hayden.

The defendant requested the judge to rule " that the inden ture was void, because the minor would reach his majority at midnight between the 6th and 7th of September 1873, and the overseers had exceeded their powers in attempting to bind him by indenture until the 8th of September 1873 ; " but the judge ruled " that the indenture was an efficient instrument to bind the apprentice to the plaintiff during his minority."

The defendant also prayed for a ruling " that the fact that minor children of Samuel Hayden were supported by the town of Shelburne until June 1860, after the father and mother had removed to another town with the rest of the family and had ceased to be in any way supported by Shelburne, did not make the father chargeable to Shelburne, in the sense intended by the Gen. Sts. *c.* 111, § 4,* so as to authorize the overseers to make *the indenture.*" But the judge declined so to rule, and on this point instructed the jury as follows : " It being admitted that, for a period of a year previous to the making of the indenture, Samuel Hayden, the father of the apprentice, his wife and all his children, having a lawful settlement in Shelburne, were a charge upon Shelburne ; that, two weeks before the making of the indenture, the apprentice's father with all his family, excepting the apprentice and two of his sisters, also minors, undertook his own maintenance, and removed and established himself and family in Coleraine at his own cost ; and that the apprentice and his two sisters, after the departure of their father, remained a charge upon the town of Shelburne, with the consent of their father, the apprentice until within five days of, and his two sisters until two months after, the making of the indenture ; the jury will find that at the time of the making of the indenture, April 5, 1861, the

* " A minor child who is, or either of whose parents is, chargeable to a town as having a lawful settlement therein, or supported there at the expense of the state, may be bound as an apprentice or servant by the overseers of the poor."

apprentice's father was chargeable upon the town of Shelburne as alleged in the indenture." The judge also gave the following instructions to the jury:

" The defendant's employment in his service, as a laborer, of George W. Hayden, the plaintiff's apprentice by indenture, without the knowledge and assent of the plaintiff, entitles him to recover of the defendant the fair value of the services of such apprentice, whether the defendant at the time of such employment did or did not know that said Hayden was the plaintiff's apprentice.

" If the apprentice of the plaintiff absconded from him, and the plaintiff did not make reasonable efforts to reclaim him, or if, when he had opportunities to reclaim him, or knowledge of him which would enable him to reclaim him, he made no such efforts to do so against the disposition of the apprentice to return to him, and while thus absent the apprentice made contracts for service and performed them and was paid for them with the knowledge of the plaintiff, or was suffered by the plaintiff to perform such contracts without interference by the plaintiff, the jury would have a right to infer a relinquishment by the plaintiff of his rights to reclaim and hold him to his personal service under the indenture, and if under these circumstances the defendant employed him he would not be liable to the plaintiff for the value of these services.

" If the plaintiff had relinquished his rights to reclaim and hold his apprentice, and afterwards the defendant employed him as a laborer, his promise to pay for this service of the apprentice would not in and of itself support this action, but evidence of such promise would indicate that the employment by him of the apprentice was understood by him and such apprentice to be without the knowledge and assent of the plaintiff, and not in pursuance of any relinquishment of the plaintiff's claims to hold said apprentice under the indenture."

The jury found for the plaintiff, and the defendant alleged exceptions.

*W. S. B. Hopkins,* (*A. De Wolf* with him,) for the defendant.
1. The boy would become twenty-one years of age the first mo-

ment of September 7, 1873.  Met. Con. 38.  There was no right to bind him as an apprentice beyond that time.  Gen. Sts. *c.* 111, §§ 1, 4.  The indenture was invalid, because the overseers of the poor thereby attempted to bind him longer.  *Butler* v. *Hubbard,* 5 Pick. 250.  *Reidell* v. *Congdon,* 16 Pick. 44.  *Reidell* v. *Morse,* 19 Pick. 358.  *Walker* v. *Chambers,* 5 Harrington, 311.  .

2. There was no evidence in chief that the boy's father was chargeable to Shelburne.  The plaintiff showed that the boy left his service and hired himself out to the defendant.  As he therefore did not base his account on any contract between himself and the defendant, the defendant stood as a third person, against whom nothing could be assumed from the recitals of an indenture to which he was not a party.  But such evidence in chief was necessary to sustain the plaintiff's case ; and was inadmissible in reply.  The judge did not admit it in reply as matter of discretion, but on the ground that it was not incumbent on the plaintiff to establish the fact in the first instance by other proof than the indenture.

3. The authority of overseers of the poor to bind a minor as an apprentice is given by the statute when the minor is chargeable to the town or when either of his parents is so chargeable.  Gen. Sts. *c.* 111, § 4.  The indenture in this case recites that the father was " actually chargeable " to the town, as the ground of the act of the overseers ; the case must therefore rest on the question whether the father was such an actual charge at the time of the making of the indenture ; *Reidell* v. *Morse,* 19 Pick. 358 ; and the evidence shows that he was not.  Fisk testified that the father had moved to Coleraine of his own motion and at his own expense, " and was no longer a charge on the town of Shelburne." A man is not a charge on a town, or in other words, a pauper, because he is a poor person unable to pay his debts or fulfil his obligations.  *Opinion of Justices,* 11 Pick. 538, 540.  *Wilson* v. *Brooks,* 14 Pick. 341.  Nor can he be held to be a pauper by reason of some of his minor children having remained, for a short time after he moved away, in those situations where the overseers of Shelburne had formerly put them when he was a pauper and an actual charge to Shelburne · for he would be liable to that

town for their support, which he could not be if himself a charge upon the town. *Hanover* v. *Turner*, 14 Mass. 227. *New Bedford* v. *Chace*, 5 Gray, 28. *Stow* v. *Sawyer*, 3 Allen, 515. Nor does this view work injustice to the town ; for it was in the power of the overseers to have bound out the boy on the ground that he was a minor who was himself chargeable to the town.

4. As it was in dispute, and was argued to the jury, whether the plaintiff had exercised due diligence to reclaim the boy, that is to say, whether the plaintiff was not in fault during the time the boy had absconded and was making his own contract, the evidence of payment to the boy should have been admitted. This is especially true in view of the instruction which made payment an important question, in one view of the case, after the evidence of payment had been excluded. Either the ruling or the instruction was erroneous.

*S. T. Field*, for the plaintiff.

AMES, J. A person who was born on the eighth day of September 1852 would become of the full age of twenty-one years if he should live to the seventh day of that month in 1873. He would be entitled to be considered as having attained his majority at the earliest minute of that day. It was not in the power of the overseers of the poor, therefore, so to bind out the minor in this case as an apprentice, that he could lawfully be held to service as such for any appreciable portion of that day. If the indenture necessarily implies an intent on their part to do so, we should be obliged to say that, in so doing, they exceeded the au thority given them by statute, and that the act of binding out the minor was void and of no effect. It has been well said that the authority given to overseers of the poor to interfere in the domestic relations of families, and to take children from their parents to be bound out as servants to strangers, is a high and arbitrary, if not dangerous, power, in favor of which nothing should be presumed, and everything required for its lawful exercise must be shown affirmatively. We think however that the obvious intent in this case was only to bind the apprentice for the term of his minority. It was not necessary to fix the exact date of its termination, and, in the absence of any imputation of bad faith,

a slight, accidental and perfectly natural mistake as to the exact date ought not to vitiate the indenture, but will leave it in the same situation, and with the same legal effect, as if no attempt had been made to name the day of the month when the apprentice would become of full age. The court therefore ruled correctly (so far as this objection is concerned) in holding the indenture to be an efficient instrument to bind the apprentice during his minority to the plaintiff.

The overseers, in making the indenture, professed to be acting in an official capacity, and in discharge of a public duty. The court was right in ruling that the recital in the instrument was *primâ facie* evidence that Samuel Hayden was a poor person lawfully settled in Shelburne, and actually chargeable thereto ; and it is immaterial that the instrument was one to which the defendant was not a party. *Reidell* v. *Morse*, 19 Pick. 358, 360. It was not conclusive, neither did it shift the burden of proof. And it was discretionary with the court, and therefore afforded no ground of exception, that after hearing the defendant's evidence upon this point the plaintiff was permited to put in new evidence, by way of rebuttal, of a kind which might have been offered in chief and as part of his original case. And upon the question whether on the fifth day of April 1861 Hayden was chargeable upon the town, as it was admitted that he had been for almost a year before that date, the jury were instructed that if, when he removed to another town, the apprentice and two other children of the family remained, with their father's consent, a charge upon the town, the apprentice until five days before and the other two until two months after the making of the indenture, they ought to find that on that day the father was chargeable upon the town. Relief furnished by the town with his consent to some of his minor children, he not being able to support them himself, is relief to him ; and the fact that he had undertaken the support of himself and another part of the family, dependent upon him, would not alter his legal position. He would still be a person receiving aid and support from the public under the provisions of the statutes for the maintenance of the poor. *Wilson* v. *Brooks* 14 Pick. 341. *Taunton* v. *Middleborough*, 12 Met. 35. It is true

Bardwell *v.* Purrington.

that the testimony of Fisk is to the effect that on the removal of Hayden he ceased to be a charge on the town ; but upon this point the whole of his testimony taken together is, that, although Hayden personally ceased to be a charge, a portion of his family still continued to receive support from the town ; and the jury must have found, under the instructions, that this was with his consent.

With regard to the defendant's offer to prove that he had paid the boy for his labor, we think that at that stage of the case it was rightfully rejected. It was not offered in connection, as we understand the report, with any evidence tending to show that the plaintiff had abandoned any of his rights, or had been wanting in due and reasonable exertion and diligence to reclaim the apprentice. If he had not lost his right to the services of the apprentice by any fault of his own, the fact that a stranger, who had had the benefit of them, had paid a party who had no right to the payment, would be immaterial. There might be circumstances from which the jury might very properly infer that the plaintiff had abandoned the right to hold the apprentice. The propriety of such an inference would depend on what the plaintiff knew, or had the means on reasonable inquiry of knowing, as to where the apprentice was and what he was doing. If the plaintiff knowingly suffered the apprentice to make and perform contracts for service, or if the plaintiff, knowing where he could be found, made no efforts, or neglected opportunities, to reclaim him and hold him to his service, he could not maintain his action, — in other words, his relinquishment of all right to hold the apprentice under the indenture could be proved by circumstantial evidence. Mere payment by the defendant to the apprentice without the knowledge or default of the plaintiff would not affect the question.

The result is, that we find no error in the rulings of the presiding judge ; and therefore the        *Exceptions are overruled.*