Case 68.—LOCAL OPTION ELECTION CONTEST BY C. P.
ERWIN, &c., AGAINST J. W. BENTON, &c.—May 18.

## Erwin, &c. v. Benton, &c.

Appeal from McLean Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From a judgment of the circuit court reversing the
order of contest board, contestants appeal.  Affirmed.

Local Option Contest—Contest Board—Final' Order—Appeal—
Swearing Judge off the Bench — Affidavit — Sufficiency—
Election Officers — Voters — Qualification — Rejected Vote —
Legal Age—How Determined—Proposition Submitted—Drug-
gists—Emblem—Improper Use—Effect..

1. Local Option—Contest—Order of Contest Board—Final Order—
Appeal—Where the contest board in a local option election
considered the evidence and made an order adjudging that "the
election be set aside, cancelled and held for naught; that no
election was held, and that neither party is entitled to have
any fact certified concerning said election," said judgment
was a final order, from which an appeal lies to the circuit
court.

2. Swearing Judge off the Bench—Affidavit—Sufficiency—An affi-
davit filed by the appellees on an appeal from the contest
board to the circuit court in a local option election contest,
stating that "the appellees in nowise question the integrity
of the presiding judge, and without imputing to him any
personal hostility to appellees, but that he can not, and will
not, afford them a fair and impartial trial of the matters
of law and facts involved in the appeal because he has a
pronounced bias to the sale and traffic in intoxicating liquors,"
is not sufficient to disqualify the said judge from sitting on
the trial of the case.

3. Holding Election—Special Officers—Under sec. 2555, Ky. Stats.,
special officers are required to be appointed to hold local
option elections, who shall be appointed by the election
commissioners of the county in which the election is held.

4. Voters — Qualification — Doubts of Officers — Rejected Voter—
Where the election officers have a doubt of the qualification

of a voter, they may require him to make the affidavit required by sec. 1477a, Ky. Stats., and until the voter either qualifies or offers to do so by making the required affidavit he is not a rejected voter, and neither the voter nor any other person can justly complain that he was not allowed to vote.

5. Legal Age—How Determined—One who was born on June 9, 1883, was entitled to vote at an election held on June 8, 1904. In law a man is twenty-one years old on the day preceding his twenty-first birthday.

6. Proposition Submitted—Effect as to Druggist—A proposition "whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned within the corporate limits of the town of Calhoun, McLean county, Kentucky, and that the provision of this law and prohibition shall apply to druggists," submitted to be voted on under the local option law in this State, is an entirety, intended, if adopted, to prohibit the sale of intoxicating liquors by druggists within said town.

7. Emblem—Improper Use—Effect—While there is no authority for the use of a device or emblem upon the ballot in a local option election, the fact that such emblems were used by both sides in such an election, and that the one used by those favoring prohibition was an open book, with the words "Holy Bible" printed across it, ought not to be allowed to defeat the voter's will where it was fairly expressed and otherwise held in conformity to law.

DAVID H. KINCHELOE and SWEENEY, ELLIS & SWEENEY for appellants.

LAW AND FACTS RELIED ON FOR REVERSAL OF THIS CASE.

1. What the answer admits.    (Powers v. Commonwealth, 114 Ky., 237, and cases there cited.)

2. Circuit judge erred in refusing to vacate bench.    (Powers v. Commonwealth, 114 Ky., 237, and cases there cited.)

3. Order entered by board of contest not a final or appealable order.    (Civil Code, sec. 368; Helm, &c. v. Short, &c., 7 Bush, 624; Maysville & Louisville R. R. v. Punnett, 15 B. M., 48; Smart v. Clift, 2 Ky., 125; Allison v. Taylor, 3 T. B. Monroe, 7; Rodman v. Forline, 2 Metcalfe, 325; Phillips v. Alcorn, 4 J. J. M., 38; Howard v. L. & N. R. R. Co., 17 Ky. Law Rep., 814.)

4. Election void because not held by any one authorized by law to hold it.    (McCreary on Elections, 4 Ed., secs. 153-176; Marshall v. Kerns, 2 Swan, 68; Foster v. Scarff, 15 Ohio State, 532; Waler v. Stanford, 78 Ga., 165; Commonwealth v. Green, 98 Ky., 22; Hoyte v. E. Saginaw, 19 Mich., 56; Commonwealth

v. Shelton, 99 Ky., 120; Denny, &c. v. Bosworth, Sheriff, &c., 24 Ky. Law Rep.)

5. Fidelity Trust and Safety Vault Co. v. Mayor, &c., of Morganfield, 96 Ky., 564, and Puckett, &c. v. Snyder, 110 Ky., 262, have no application to the case at bar.

6. Persons who held the election were neither de jure nor de facto officers, but mere intruders. (110 Ky., 398; 2 Bart. El. Cases; Van Amrige v. Taylor, 108 N. C., 196; American & Eng. Ency., 2 Ed., vol. 10, 671, notes 3 and 4; State of North Carolina v. Van Amrige, 12 Lawyers' Rep. Ann., 202.)

7. Device used on ballot by those who favored local option prohibited by sec. 1453, Ky. Stats. (Ex parte Jordan, 94 U. S., 251; Williams v. Chicago, 42 Ill.; 2 American Dec., 737; State v. Salty, 166 Miss., 559; Ky. Stats., sec. 1453; 25 American & Eng. Ency., 2 Ed., 633, and notes.)

8. Election void because question on the ballot is self-contradictory and could not be answered by "yes" or "no."

9. Wilbur Hobson was a minor; his vote should have been rejected. (1 Minor's Ins., 103; American & Eng. Ency., 2 Ed., vol. 1, p. 927.)

10. Facts found by board of contest correct, but some of its conclusions of law were wrong.

11. Appellees intimidated certain voters and prevented others from voting, which renders the election void. (Constitution, sec. 148; Ky. Stats., 138. See compilation of Election Laws.)

12. At least five electors who offered to vote against local option were illegally denied the right to do so. Election should be set aside on this ground.

JOE H. MILLER and LITTLE & TAYLOR, of counsel, for appellees.

### POINTS AND AUTHORITIES.

1. Affidavit filed by appellants does not state facts sufficient to warrant the regular judge to vacate the bench. (German Ins. Co. v. Landrum, 88 Ky., 440; Schmidt v. Mitchell, 19 Ky. Law Rep., 763.)

2. Appellees had a right to appeal from the judgment of the contest board. (Ky. Stats., sec. 2567.)

3. All legal voters of a precinct are entitled to vote therein, and when their residence is once fixed it must be shown to have been abandoned. (Tipton v. Tipton, 87 Ky., 245; Edwards v. Logan, 70 S. W. R., 854; McCrary on Elections, sec. 71; Cooley's Constitutional Limitations, sec. 754.)

4. A man is twenty-one years old on the day preceding his twenty-first anniversary. (Hamlin v. Stevenson, 4 Dana, 597;

State v. Clark, 3 Harrington, 557; Ross v. Morrow, 16 L. R. A., 542; Wells v. Wells, 6 Ind., 447; Bardwell v. Purrington, 107 Mass., 419; A. & E. Ency. of Law, vol. 1, 2 Ed., 927.)

5. A voter challenged, and failing to make the statutory affidavit, is not allowed to vote, nor can his vote be counted unless it was cast. (Ky. Stats., sec. 1477; Coley's Constitutional Limitations, 776; A. & E. Ency. of Law, vol. 10, 2 Ed., 705 and 844.)

6. Officers of election being sworn officers, it must be presumed that they did their duty until it is clearly proved otherwise. (Anderson v. Winfree, 85 Ky., 597.)

7. The local option election should be held by special officers, and the election is not invalidated by mere irregularities in the appointment of officers. (Ky. Stats., sec. 2555, and sec. 1596a, sub-sec. 3; Puckett v. Snider, 22 Ky. Law Rep., 1720; Varney v. Justice, 86 Ky., 599; Fidelity Trust and Safety Vault Co. v. Mayor, &c., Morganfield, 96 Ky., 566; Cooley's Constitutional Limitations, pp. 93 and 618; Lawson's Rights and Remedies, vol. 7, sec. 3798; Trustees of Common School District v. Garvey, 80 Ky., 159; Sutherland on Construction of Statute, sec. 452; Motley v. Wilson, 26 Ky. Law Rep., 1012.)

8. Proposition submitted is not self-contradictory and does not invalidate the election. (Ky. Stats., sec. 2558; Gayle v. Owen County Court, 83 Ky., 70; Clark v. Leathers, 9 Ky. Law Rep., 560; Stone, &c. v. Gregory, Judge, 23 Ky. Law Rep., 1; Motley v. Wilson, 26 Ky. Law Rep., 1011.)

9. Proposition submitted in form prescribed by statute, and can not invalidate the election. (Ky. Stats., sec. 2554; Gayle, &c. v. Owen County Court, 83 Ky., 70; Bowers v. Smith, 16 L. R. A., 754.)

10. The device used on ballots does not invalidate election. (Ky. Stats., sec. 1453.)

11. The decision of the lower court should be sustained. (Williams v. Rogers, 14 Bush, 776; Anderson v. Winfree, 85 Ky., 597; Cowen v. Prowse, 93 Ky., 156.)

Opinion by Judge O'Rear—Affirming.

This appeal presents a contest of the local option election held in the town of Calhoun, on June 8, 1904. The election was regularly called, and was held at the time and places indicated in the call. The result showed an apparent majority of two in favor of prohibition. Certain electors instituted a contest under the statute, which came on to be heard by the contest board, composed of the county judge and the

two nearest qualified justices of the peace. The contest board, considering the evidence, decided that there was no election. Consequently the result as certified by the board of canvassers was set aside. On appeal to the circuit court it was decided that the election was valid, and that the proposition submitted, viz., whether spirituous, vinous and malt liquors should be sold in the town of Calhoun, had carried by a majority of two. It is from the last named judgment that this appeal is prosecuted.

The first question presented is whether the order entered by the contest board was such a final order as admitted of an appeal from it to the circuit court. The order reads as follows: "The undersigned board of contest, sitting in the above styled proceeding, is unable to find from the evidence that a majority of the legal votes cast at the election in the town of Calhoun on the 8th day of June, 1904, were cast either in favor of or against the proposition "whether spirituous, vinous or malt liquors shall be sold, bartered or loaned in said town." Therefore, it is ordered and adjudged that the return made by the board of canvassers in the matter of said election be, and it is, set aside, canceled, and held for naught; and it is further ordered and adjudged that there was no election, and that neither party is entitled to have any fact certified concerning said election. And it is further ordered and adjudged by the board that the foregoing order and finding be spread upon the order book of the McLean County Court."

In this contest the parties may be deemed those electors who favored and those who opposed the proposition submitted. By the certificate the result was that prohibition was established in the town. By the action of the county board this status was changed. The proposition, instead of being defeated,

was left as it was before, which was that such liquors might be lawfully sold. The judgment was final, and, in view of the conclusion at which the board had arrived, was the only one possible. Being final in fact, as well as in depriving one set of litigants of that which they before had, it was a final order or judgment, so that an appeal would lie from it under the statute (sec. 2567, Ky. Stats., 1903) to the circuit court.

On the appeal to the circuit court an objection was made to the regular judge by affidavit. He declined to vacate the bench. The sufficiency of that affidavit is raised by his ruling. The wording of the affidavit is as follows: "The appellees, who were the contestants before the board of contest, from whose judgment this appeal was prosecuted, in no wise questioning the integrity of the Honorable T. F. Birkhead, the regular judge of this court, and without imputing or intending to impute to him any personal hostility to appellees, say he can not and will not afford them a fair and impartial trial of the matters of law and facts involved in this appeal. The said Birkhead, regular judge of this court, is opposed to the sale and traffic in such liquors to the extent that he has a pronounced bias against it. They believe, and on such belief state, that the bias of the regular judge of this court against the licensed traffic in spirituous, vinous and malt liquors is so pronounced that he can not and will not afford them a fair and impartial trial. The principal, if not the only, question involved on this appeal, relates to the validity of an alleged election held in the town of Calhoun on the 8th day of June, 1904, on the proposition as to whether or not spirituous, vinous or malt liquors shall be sold in said town. They believe and state that the regular judge of this court entertains a bias

against the grounds of contest relied on by appellees, and that same is so pronounced that he can not and will not afford them a fair and impartial trial of the matters of fact and law involved in this proceeding on this appeal. The affiants, who are appellees on this appeal, say they believe the statements in the foregoing affidavit are true.''

No fact is stated showing or indicating the bias complained of. Bias of mind is, until demonstrated by act, purely a mental state. Incapable of being proved or disproved with any degree of certainty, the allegation of bias, unaccompanied by facts indicating it, may be easily made. If the mere allegation in the objecting affidavit were sufficient, then it were possible always to remove a trial judge upon the mere charge of a litigant, without his hazarding anything if his statements should be true. The opinion in Powers v. Commonwealth, 114 Ky., 237, 24 Ky. Law Rep., 1007, 70 S. W., 644, 1050, 71 S. W., 494, is relied on. But the state of the record presented here falls far and fatally short of the rule announced in that case, and gathered from Insurance Co. v. Landram, 88 Ky., 434, 10 Ky. Law Rep., 1039, 11 S. W., 367, 592; Vance v. Field, 89 Ky., 178, 11 Ky. Law Rep., 388, 12 S. W., 190, and Massie v. Commonwealth, 93 Ky., 588, 14 Ky. Law Rep., 564, 20 S. W., 704.

It was distinctly held that difference in political belief alone on the part of the judge and a litigant would not disqualify the judge from trying a cause in his court. In the case at bar it is expressly stated that the judge was not personally hostile to or biased against the litigants. It is admitted that his official integrity was unquestioned. It is not charged that by any act or word had he indicated any bias against appellants or their case. The objection rests solely

upon the asseveration that the judge is biased against
the liquor traffic.  If the liquor traffic is an evil (as
many believe it is), if violation of the Sabbath by
doing secular work is an evil (as many regard it),
if combinations of capital to crush competition in the
utilities of life is an evil (as is supposed by a major-
ity of people, probably), a judge who regarded these
things unfavorably would be disqualified to try a case
wherein any of them was involved if appellants' po-
sition is right.   And, to carry the same argument
forward, a judge biased against crime would be un-
fitted to try criminals.  The law is administered not
by the personal predilections of the judge, but by
the application of known and accepted rules or prin-
ciples to the facts of the controversy.  Very rarely
it must happen that the judge's personal views can
properly enter; or do they enter, into the adjudica-
tion of the matter before him.  For he delivers not
his judgment but the laws.  If it be conceded that
he is enlightened in the law, upright in character,
and disinterested personally in the result of a liti-
gation, his individual views can be of but little, if
any, weight in the matter.  It is inconceivable that a
man qualified to act as a judge of a circuit court can
have formed no opinion regarding many, if not
most, of the moral and economic questions which have
engaged public attention for many years.  It would
be an astounding proposition if it were true that
judges with personal opinions on such questions were
disqualified to act in cases where the law as written
is to be applied where those matters became involved.
To admit the premise, it seems to us, is to abdicate
the right of popular government.  There is no re-
ported case in this State that holds, nor has it ever
been held under any statute, that a mere charge of
bias or hostility against the judge will disqualify

him from sitting on the trial of a case. Facts which, if true, would probably operate to prevent his giving a fair trial, must be alleged. The affidavit in this case is wholly lacking in this particular.

There are a number of objections urged against the validity of the election, as well as against the validity of certain voters who participated in it, upon the decision of which this case does, and similar cases may, depend. We will notice them in order. ·

The officers of election who held this election were appointed by the election commissioners of McLean county. There is no question made that they did not possess all the statutory qualifications. Their conduct of the election appears to have been as nearly in conformity to the statute as is customary. Indeed, no complaint is made of them. But it is urged that the county election commissioners had not the right to appoint them, or others, to hold this election; that the officers appointed for those precincts for the preceding November election continued in office as precinct election officers for "one year, and until their successors were chosen and qualified." (Sec. 1596a, subsec. 3, Ky. Stats., 1903.) Until the extraordinary session of the Legislature in 1900, election officers were removable by the appointing power at any time. Such, at least, was the practice in the practical construction of the statutes. Abuses of the system having led to widespread dissatisfaction, the law governing elections was so amended as to prevent, it was believed, arbitrary substitutions designed for purposes of giving undue advantage to one party over the other.

Sec. 1596a, subsec. 3, adopted to carry that idea into effect, reads: "Said county board shall, annually, not later than September 20th, appoint for each election precinct in the county two judges, one clerk, and

one sheriff of election, to act as such in their pre-
cincts, and shall hold their office for one year and
until their successors are appointed and qualified.''

Elections under the local option law are provided
for in a different statute (chap. 81, Ky. Stats., 1903,
title ''Intoxicating Liquors'').

Sec. 2555, providing for the calling of the election,
reads in part: ''All elections provided for in this
act shall be held by such officers as would be qualified
to hold elections for county officers, and they shall be
selected in the same way; and all elections provided
for herein shall be held in accordance with the pro-
visions of the general election laws of the State, ex-
cept that they shall not be held on the same day with
any regular political election, nor within thirty days
next preceding or following any such regular politi-
cal election.''

This statute was enacted in 1894. At that time
election officers were not required to have quite the
same qualifications as are now required, nor were
they appointed in the same way. Sec. 2555 does not
require that the same officers appointed to hold other
elections in those precincts shall also hold the local
option election therein. Nor does sec. 1596a, subsec.
3, Ky. Stats., 1903, provide that officers of election
in those precincts shall hold all elections held therein
during their term of office, though the latter propo-
sition would seem to follow the wording of the stat-
ute, except where other provision has been made,
as for holding school elections and local option elec-
tions, the only elections save primaries that can be
held at other times than at the regular elections. We
are of the opinion, however, that the language of sec.
2555 requires special officers to be appointed to hold
local option elections. The section does not say such

elections shall be held by those officers appointed to hold other elections in such precincts during their term of office, as it might have done, but, on the contrary, provides that they be held "by such officers" as would be qualified to hold regular elections; that is, be held by officers who shall possess the same qualifications of election officers holding regular elections for county officers. It also provides that they shall be selected in the same way, indicating clearly that, instead of the same persons being used, others, but to be selected by the same authority, were to be chosen. Officers of regular elections are now chosen from lists nominated by their respective political parties. The reasons are forceful and practical. They can not apply at all to the selection from the same lists of officers to hold local option elections, though the ones selected for the general elections are not necessarily disqualified from the latter service.

In Puckett v. Snider, 110 Ky., 261, 61 S. W., 277, 22 Ky. Law Rep., 1720, it was held under sec. 2555, supra, that it was proper for the appointing officer to appoint special officers to hold local option elections. Whether the reason given for the distinction is the real one actuating the Legislature in so providing is immaterial. It may or it may not have been their reason. But, as the provision seems to clearly indicate the course, it matters not what the reason was.

A number of votes were contested because it was alleged that the voters were not residents of the precinct where they voted. Others were refused the right to vote, because it was thought they were not legal voters. These were all dependent upon the fact of residence. Some people, without families, and of wandering disposition, or whose callings do not admit of their stopping long at one place, can not

always establish the fact of their residence being at a certain place as satisfactorily as those whose habitations are fixed. Yet, in law, every person has a domicile. In some instances it may be different from his actual abode. Until he has changed it, which is a combination of act and intention, it continues to be his domicile in law. (McCrary on Elections, sec. 71.) Where one has had an actual domicile, and departs from it temporarily, intending to return, it will remain his legal domicile for all purposes. Sec. 1478, Ky. Stats., 1903, gives the rules for determining the residence of a voter. We think the trial court ruled correctly as to all the voters voting, whose right to vote depended upon the fact of their residence.

Three voters were refused the right to vote, at least they were challenged and failed to vote. They did not sign, nor offer to sign, the affidavit allowed by sec. 1477a, Ky. Stats., 1903. The blanks were present, and the voters were so notified. They chose to leave without voting, being in doubt themselves, it seems, whether they were legal voters. Until the voter either qualifies by showing his right to vote, or offers to do so by making the affidavit required by law, he is not a rejected voter. The officers of election, if honestly in doubt concerning his right to vote, may properly demand that he comply with the law, so as to protect the ballot, by the safeguards provided by the statute, from illegal voting. The conditions provided are reasonable, and, until complied with, neither the voter nor any other can justly complain that he was not allowed to vote. (Cooley's Const. Lim., 776.)

One voter was said to have been intimidated, and another hindered or bribed not to vote. The evidence does not satisfy us on the latter point at all. In the former it is so conflicting that we are unwilling to

disturb the judgment of the court and that of the
contest board on this point.

One voter was born June 9, 1883. The election was
held, as stated, on June 8, 1904. Consequently the
day following the election was his "birthday." The
question is, when did he become twenty-one years
old? The law does not take notice of a part of a
day. Its division of time into days is to allot, say,
twenty-four hours to the day, each day ending at
midnight. So a day in law may be very much less
than twenty-four hours. It may, of course, be less
in fact than one hour, or even one minute. Where
time is an element of a fact, its beginning is deemed
to have been coincident with the first moment of the
first day of the event. The year in law is 365 cal-
endar days. One born on the first day of the year is
consequently deemed to be one year old on the 365th
day after his birth—the last day of that year. As
a matter of fact, he may not be. For he may not
have been born on the first moment of the first day
of the year, which would have been necessary to
make him one year old on the last moment of the
last day of that year. So, unless the law should take
notice of parts of days, it would more frequently
happen that one would have to be twenty-one years
and one day, or twenty-one years and some part of
an additional day, old, before he could do any act
permitted to be done by an adult and proscribed to
a minor. For it is hardly possible that many people
could prove the precise moment of their birth by
any kind of evidence. This has given rise to some
nice discussion as to when in law one does become
twenty-one years old. As at that age he is a man,
can make a will, enter into contracts, and vote, and
bind himself and his property as an adult, the ques-
tion has frequently arisen, though it seems to have

been before this court but once, and there it was assumed, without discussion or citation of authority, that one is twenty-one years old on the day preceding the twenty-first anniversary of his birth. (Hamlin v. Stevenson, 4 Dana, 597.) The conventional fixing of twenty-one years, by the common law, when man's estate of full responsibility is begun, has been adopted generally where the common law has gone. It was adopted in deference to considerations of expediency similar to those upon which rest the maxim that the law takes no notice of a fraction of a day. Inasmuch as a man is a man when he is twenty-one, he is then entitled to all the privileges, as he is charged with the responsibilities of full age. At twenty-one he may lawfully do what he could after he is twenty-one. Time is continuous, and, of course, is not in fact severable. There is no instant between the ending of one period and the beginning of the succeeding one. When twenty-one years have passed, the twenty-second year had begun. So, if it were said that twenty-one years must actually pass before one is of full age, it would follow that he would be more than twenty-one in fact before he attained to the privileges which the common law gives to one who is just twenty-one years old. The law notes no fraction of any day. In law a man is twenty-one years old on the day preceding his twenty-first birthday, and may then do whatever is allowed to an adult to do. Hence one born on June 9, 1883, at 11:59 p. m., is deemed in law to have been born on the first moment of that day. By like rule, on the first moment of June 8, 1904, he has encompassed twenty-one complete years, although, as a matter of fact, we see that he lacks forty-seven hours and fifty-eight minutes of having done so. This illustrates one extreme of the possibilities of the rule. But it

is supported by the great majority of the adjudged cases; indeed, the courts seem quite unanimous on the point. (1 Bl. Com., p. 463; Bingham's Infancy, p. 2; Ross v. Morrow, 85 Tex., 172, 19 S. W., 1090, 16 L. R. A., 542; Wells v. Wells, 6 Ind., 447; Bardwell v. Purrington, 107 Mass., 419, 425; State v. Clarke, 3 Har., 557.) Professor Minor assails the doctrine as absurd. (1 Minor's Inst., 514.) Redfield also seems to regard it as "a blunder." (Redfield on the Law of Wills, 19.) But it has been too long established now to depart from it, particularly as no good could come from the change.

Another contention of appellants is that the proposition submitted was self-contradictory and misleading. The proposition as printed upon the ballots reads: "Proposition: Whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned within the corporate limits of the town of Calhoun, McLean county, Kentucky, and that the provisions of this law and prohibition shall apply to druggists."

The argument is that, if an elector desired to vote "No" on the proposition whether intoxicating liquors of any kind should be sold in the territory mentioned, but desired to vote that druggists might sell, his voting "No" would not reflect his will, nor would his voting "Yes." This argument proceeds upon the supposition that the propositions are severable, whereas they are not. We have in this statute the initiative and referendum. The electors by their petition—a given number joining in it (sec. 2554, Ky. Stats., 1903)—initiate the proposition upon which the election can be held. They alone determine its extent. Unless they see proper to include druggists in the prohibition, and unless they are so included in the propositon voted on, the law will not apply to them. (Sec. 2558, Ky. Stats., 1903.) Their proposition as

an entirety is referred to the electors for ratification or rejection, and it must be adopted or rejected as a whole. The proposition, in view of the petition in this case, was properly worded. It was whether the sale, loaning or giving of spirituous, vinous and malt liquors should be prohibited in that town, including sales by druggists.

The remaining question is, was the emblem adopted for the ballot in behalf of the local option advocates in violation of the statute? It seems to have been assumed by the county court clerk who prepared the form of the ballot, and by all parties concerned, that a device was authorized to be used on the ballots.

Sec. 1453, Ky. Stats., 1903, concerning elections, defines the duties of county court clerks in preparing ballots. It authorizes the selection by political parties of devices. It reads (in part): "If the certificate of nomination of any State convention shall request that the figure or device selected by such convention be used to designate the candidates of such party on the ballots for all elections throughout the State, such figure or device shall be used until changed by request of a subsequent State convention of the same party. Such device may be any appropriate symbol; but the coat of arms or seal of the State, or of the United States, the national flag, or any other emblem common to the people at large, shall not to be used as such device."

It is elsewhere provided in the statute regarding nominating candidates by petition to be voted for at a general election: "Such petition shall state the name and residence of each of such candidates; that he is legally qualified to hold such office; that the subscribers desire, and are legally qualified to vote for such candidate; shall designate a brief name or title of the party or principle which said candidates rep-

resent, together with any simple figure or device by which they shall be designated on the ballot.''

Sec. 1460, Ky. Stats., 1903, respecting the form of the ballot, allots the devices chosen for parties to their respective groups of candidates, and allows the clerk to adopt a device for those candidates who have chosen none. These sections pertain altogether to the nomination of candidates for office, and the placing of their names on the official ballots. Sec. 1459, Ky. Stats., 1903, regulates the submission of constitutional amendments and other public questions. It reads (except as to constitutional amendments): ''Whenever a  *  *  *  public measure is proposed to be voted upon by the people, the substance of such  *  *  * public measure shall be clearly indicated upon the ballot, and two spaces shall be left on the right of the same, one for votes favoring the  *  *  *  public measure, to be designated by the word 'Yes,' and one for votes opposing the  *  *  *  measure, to be designated by the word 'No:' The elector shall designate his vote by a cross mark, thus (X), placed opposite the word 'Yes' or 'No.' ''

There is no authority whatever for the use of a device or emblem upon the ballot submitting a public measure. Notwithstanding, these ballots were provided with devices for each side of the proposition. The one for those favoring prohibition was an open book, with the words printed across it, ''Holy Bible.'' The device for those opposing prohibition was a female figure holding aloft a balance. No device at all should have been used on the ballots. Still, if those used were otherwise unobjectionable, and as all the ballots had the same devices, so that none were thereby distinguishable from the others, that fact would not justify setting aside the election. Defects not calculated to affect the results of an elec-

tion, and which have not done so, ought not to be allowed to defeat the voter's will, where it is fairly expressed, and the election has otherwise been held in conformity to the law. (Anderson v. Winfree, 85 Ky., 597, 9 Ky. Law Rep., 181, 4 S. W., 351, 11 S. W., 307; Clark v. Leathers, 5 S. W., 576, 9 Ky. Law Rep., 558; Bailey v. Hurst, 113 Ky., 699, 24 Ky. Law Rep., 504, 68 S. W., 867; Pettit v. Yewell, 113 Ky., 777, 24 Ky. Law Rep., 565, 68 S. W., 1075; Graham v. Graham, 113 Ky., 743, 68 S. W., 1093, 24 Ky. Law Rep., 548.)

Though it be conceded that the words "device," "emblem," "symbol," and "figure" in the statute mean the same thing, which is that the device or figure used may be such symbol as will represent a particular idea, and though it be further conceded that the use of a figure of a book, with words indicating that it represents the Holy Bible, and that it is such a type or symbol that it is common to all the people, and therefore within the mischief sought to be prevented by the satute quoted from (sec. 1453, Ky. Stats., 1903), and that the prohibitory language is mandatory, still we are not able to agree with learned counsel's argument that all the ballots were thereby vitiated and the election failed. It would never be granted that putting a device on the ballots annulled the election, where the statute said nothing about devices at all, and where it was shown that the one used did influence the election. If it would be more than an irregularity, for which the electors would not be made to suffer, it must be because the law specifically makes it so. Counsel anticipate the force of that by assuming the position that this device was one expressly and mandatorily prohibited. It was not prohibited, though, as we have seen, used **on ballots for an election submitting a public meas-**

ure alone. If the Legislature has so prohibited its use with respect to candidates for office as to render the election void if the prohibition is ignored, the courts would so hold by the sheer force of the legislative mandate, and not otherwise. But legislative mandates are always direct, and are never implied by analogy. The court would be entirely without justification in holding that, because the Legislature has declared that a particular device should not be used for one purpose, and, if it was, the election would be null, therefore, if the device was used for an entirely different purpose, about which the Legislature had said nothing, one way or the other, the election would likewise be void. No rule of statutory construction authorizes that course. From the cases cited above it is seen that the positive tendency of the adjudged cases is not to defeat the electors' will by strict attention to immaterial defections by election officers. In the case at bar the elector did not arrange his ballot, nor could he control its arrangement; he had to vote that one, or not vote at all. It is not shown that its form in any wise influenced any voter's action. The law will not deprive the electors of their rights, and defeat their expressed will, for such an informality.

The other objections to the election are fully covered by the principles announced above.

Perceiving no error in the trial, the judgment is affirmed.

CHIEF JUSTICE HOBSON not sitting.