## Hail, et al. v. Gragg, et al.

(Decided May 19, 1914.)

### Appeal from Pulaski Circuit Court.

1. Intoxicating Liquors—Local Option Election—Election Officers.—The fact that in the Somerset precincts the same officers were appointed to hold the local option election for the city of Somerset as were appointed to hold the general election did not disqualify them from holding the local option election.

2. Intoxicating Liquors—Local Option Election—Election Officers—Section 2555, Kentucky Statutes.—Section 2555 of the Kentucky Statutes does not render mandatory a requirement for equal division of the election officers on the question of the sale of liquor.

3. Intoxicating Liquors—Local Option Election—Election Officers.—The officers holding the election being at least de facto officers, and it being admitted that there was no fraud in their conduct of it, and the vote certified by them appearing to be a true expression of the will of the voters upon the question, the judgment of the lower court upholding the election was proper.

JOHN W. COLYAR, J. N. SHARP for appellant.

WESLEY & BROWN and DENTON & FLIPPIN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On the 29th day of September, 1913, and by a majority of 57, the people of the city of Somerset, at a local option electon, voted against the sale of intoxicating liquors within the corporate limits. Those favoring the sale filed contest papers, and the contest board and cir-

cuit court having upheld the election, they prayed an appeal to this court. In order to have the matter disposed of, the contestees, that is, those opposed to the sale, being represented by the appellees, have brought the record here.

While the officers who conducted the election within the city were appointed by the county election commissioners, it is insisted by the contestants, appellants here, that the election officers were not appointed for the special purpose of holding the local option election, nor were they equally divided as to their preference for and against the sale. They argue (1) that the election laws, as construed by this court, require a division of the election officers between parties favoring the sale of liquor, and those opposed to it, and (2) that it was the duty of the county election commissioners to appoint special officers to hold the local option election; (3) that these provisions of the law are mandatory, and that an election held in disregard of them is void. These are the only grounds of contest.

In the circuit court the case was submitted on demurrer, and on an agreed statement of facts, should the court deem a consideration of them necessary for a proper adjudication of the case. While the lower court decided against the contestants on demurrer, we desire to notice the facts as shown by the agreed statement. It appears from the statement that the county election commissioners met on the 19th day of September for the purpose of appointing precinct officers for the local option election to be held on the 29th, and a copy of the record of the election commissioners showing the appointment of the officers is made a part of the statement. The commissioners' record shows that election officers were appointed to serve for the five precincts within which the city of Somerset is located, and appointments were also made at the same time for every other precinct within Pulaski County. The record makes no reference to the local option, or any particular election, but merely recites that the men named were selected "as officers of election for the various precincts of Pulaski County." Opposite each name appears the letter "D" or "R," and in equal proportions. It is not explained whether the letters signify that the officers are Democrats or Republicans, or whether they are adherents of the Dry or Rum side of the liquor controversy. So far as the record

is concerned, we may presume that these officers were appointed to serve for one year, the statutory period, and the agreed statement shows that they were so appointed. It is also agreed that the officers possessed all legal qualifications "for precinct election officers;" that at no time did any person interested on ether side of the local option controversy make any demand, or submit any list of names for the appointment of officers; that most of the officers who held the local option election were opposed to the sale of liquor in Somerset. It is agreed that the officers appointed held the election at the proper time, and in the manner required by law, and that they properly counted and certified the vote cast at their several precincts. It is further agreed that every voter who desired, and was entitled to vote in said election, was permitted to do so, and that all of the votes cast were counted as cast, and that no person who was entitled to vote was deprived of such right, and that the election was conducted honestly, and without fraud on the part of the officers, or any of them.

In view of these admissions as to the honesty of the election officers, and the fairness with which the election was conducted, and the correctness of the vote as certified, we revert to the question raised by contestants. And that is, were special officers required to be appointed to hold the local option election, and was it necessary that those appointed be equally divided on the question of the sale of liquor, and if so, did a failure to meet these requirements render the election void? Construing the agreed statement of facts, and the record of the county election commissioners, it seems to us that they appointed the regular election officers for the entire county, and as for the Somerset precincts, these same regular officers were also appointed to hold the special local option election. Contestants insist that where the agreed statement shows that the county commissioners met "for the purpose of appointing precinct officers for the local option election," that does not mean that they actually did meet, or carry out their purpose. But the agreed statement, in the language immediately following this quotation, shows that when they met "for the purpose of appointing precinct officers for the local option election to be held September 29th," the meeting was also held for the purpose of appointing officers "to serve for one year from the date of their appointment.

That all of said officers had the legal qualifications prescribed by law for precinct election officers.''

This seems to us to show that the county election commissioners did exactly what contestants insist they were required to do under the law, and that is, they met for the dual purpose of appointing officers to hold the local option election, and also to hold the general election. The fact that in the Somerset precincts the same officers were appointed to hold both elections, did not disqualify them from holding the local option election. In Erwin v. Benton, 87 S. W., 291, special officers were appointed by the county commissioners to hold the local option election, and contestants objected to these special officers on the ground that theretofore regular officers had been appointed to serve for one year, and therefore they should hold all elections. We construed section 2555, Kentucky Statutes, to require the appointment of special officers to hold the local option election, but in the same connection we said ''the ones selected for the general elections are not necessarily disqualified from the latter service.'' (From holding local option elections.)

Contestants insist that the election was void because the officers holding it were not equally divided in sentiment on the question of liquor sales. They rely on the case of Denny v. Bosworth, 24 K. L. R., 554. The Democratic majority of the county election board, ignoring the single Republican member, attempted to nullify their former action in appointing election officers, and to substitute other officers, all of whom, or a majority at least, were members of the Democratic party. This court decided that a mandatory injunction was proper remedy to require the board to meet and make all necessary orders for reinstatement of the election officers arbitrarily removed by them. It was held that the majority of the board, when they undertook to appoint officers without regard to the lists handed in by the two dominant political parties, were violating both the spirit and the letter of the statute. It was also held that these provisions of the statute requiring the county board to select the election officers from lists tendered by the two parties was mandatory. The question there is quite different from the one here. The statute plainly recognizes the right of the two dominant parties to suggest to the county commissioners names for appointment as election officers, and it is mandatory upon the commission-

ers to name the officers from these lists, taking an equal number from each. But if the political parties should fail to submit lists for appointment, certainly no one would contend the commissioners were thereby powerless to make their own selection; otherwise, no election could be held, and a whole county might be disfranchised. No other parties are by statute considered as having a right to demand recognition in the appointment of officers, nor does the statute anywhere give to any individual or organization favoring, or opposing any question submitted to the people, such mandatory rights. This court, as a matter of fair play and in furtherance of honest elections, has held that the spirit of the law, if not the letter, required that special officers be appointed to hold local option elections, and that they should be divided between the parties favoring the sale, and those opposed to it. Puckett v. Snider, 110 Ky., 261. It was largely on account of this desire, to have elections conducted with an equal number for and against the question to be voted upon, that induced the liberal construction of section 2555 of the statute as to require the appointment of special officers for local option elections, because it was realized that officers appointed for one year terms to hold the general elections, were by law required to be divided on questions of politics, and not necessarily on the question of the sale of liquor, but no sort of construction, or interpretation can render the statute a mandatory requirement for an equal division of the election officers on the question of the sale of liquor. This court favors the policy of equal division, but the statute does not give legal status to any organization either for or against the question, or the power to demand such division, and we have never held that a local option election was void because the officers were not so divided in sentiment, and it could not so hold in this case where it is admitted that no demand or request was ever made for such division.

But in this case contestants admit that the officers who held the election were appointed by the county board who had the power to select them, so they were officers *de facto,* if nothing more; they were in possession, that is, they actually held the election, and they held it under color of title, and under conditions such as to indicate acquiescence of the public in their action. Such a person is recognized the country over as a *de*

*facto* officer. Wendt v. Berry, 154 Ky., 586. The rule with relation to *de facto* election officers is stated as follows in 10 Am. & Eng. Encyc. of Law, 2nd Edition, page 670:

"The general principle that the acts of an officer *de facto* are valid, so far as respects the public and third parties, applies as well to election officers as to others; and the question of irregularity of their appointment ought not to be entered into in an election contest."

In Varney v. Justice, 86 Ky., 596, we held that "where an election is held within the hours and at the place designated by law, mere irregularities in the appointment of officers, or in their proceedings, will not vitiate the poll, nor disfranchise a legal voter, unless the merits of the case are affected, when the statute should be construed as mandatory."

Fidelity Trust and Safety Vault Co. v. Mayor, &c., of Morganfield, 96 Ky., 563, was an election contest involving the validity of bonds issued by the city to build water works. The officers who held the election were appointed by the city council, and it was said that: "Though the officers holding said election were not appointed by proper authority, and were not, in fact, the identical officers who should have held said election, yet an irregularity of this kind in this matter would not render illegal or invalid said election, nor the indebtedness created under same."

For the reason that the officers holding the election were at least *de facto,* and it being admitted that there was no fraud in their conduct of it, and that the vote as certified by them was a true expression of the will of the voters of the city on that question, we must affirm the judgment of the lower court, and it is so ordered.