CARLYLE PETERSILEA vs. AMOS STONE.

Suffolk. Nov. 15, 1875. — Jan. 11, 1876. ENDICOTT & LORD, JJ., absent.

Service of notice of intention to take the poor debtor's oath was made by a person who had been duly appointed and qualified as a constable of the city of Boston, and had held the office for several consecutive years, but the term of whose appointment had expired at the time of service. He was generally known as a constable, and at the time was notoriously acting as such, having an office in Boston, on the door of which was his name with the addition "constable." The debtor delivered the notice to him believing him to be a constable. *Held,* that he was an officer *de facto,* and that the validity of the service could not be collaterally called in question, in an action on the recognizance given by the poor debtor.

CONTRACT upon a poor debtor's recognizance entered into by Abraham B. Shedd, as principal, and the defendant as surety. The case was submitted to the Superior Court, and after judgment for the defendant, to this court on appeal, or on agreed statement of facts in substance as follows :

VOL. V. 30

It is agreed that the defendant entered into the recognizance declared on, and that all the proceedings had upon the application of the judgment debtor, Shedd, for the benefit of the law for the relief of poor debtors, were valid and regular, except in the service upon the plaintiff of the notice of Shedd's desire to take the oath provided for in such cases, the plaintiff contending that the service of the notice by Ephraim W. Farr, describing himself as a constable of the city of Boston, was not sufficient. The question of the sufficiency of service by Farr is the only one at issue in this case.

It is agreed that Farr was duly nominated and confirmed as a constable of the city of Boston, and received a warrant or certificate, gave a bond, as required by law, in order to enable him to serve civil process, and was duly sworn and qualified on October 16, 1873, the bond reciting that Farr had been appointed a constable of the city " for one year from September 29, 1873, and until another be appointed in his place," and entered upon the discharge of his duties as constable.

At the general appointment of constables, which is made annually, on September 28, 1874, Farr was nominated by the mayor, but failed of confirmation at the time of general confirmation, but was afterwards confirmed on November 9, 1874, gave a bond as aforesaid, and was duly sworn and qualified on November 30, 1874, his certificate bearing date November 9, 1874. The notice referred to above was seasonably served on October 5, 1874.

Farr had been for several consecutive years a constable of said city, duly qualified to serve, and serving, civil process, and was generally known as such, and on that day, before, at the time of, and after the service, he held himself out and was notoriously acting as such constable, as he had done since September 29, 1873, having an office in Boston, and on the door thereof his name with the addition of " constable." Shedd delivered the notice to Farr for service at his office, and then and until long after such service believed that Farr was duly qualified as such constable to serve the notice. Farr arrested Shedd on the execution, in pursuance whereof the recognizance was taken, and at the time of receiving and serving said notice held said execution as such officer.

If admissible, the plaintiff can prove that Farr knew that he had failed of confirmation as constable on September 28 ; **but it**

is agreed that he and Shedd both acted in good faith, both be‹ lieving that Farr was duly authorized to serve said notice.

The number of constables for the city of Boston varies from year to year, and the time for their appointment is not fixed, the number of constables and the time for their appointment and confirmation being regulated solely by the discretion of the mayor and aldermen. Appointments and confirmations were in fact made on several different days between September 28 and December 31, 1874, and on October 5, 1874, there was a large number of constables duly appointed and qualified to serve civil process in said Boston.

If the service of said process was sufficient, judgment was to be entered for the defendant ; otherwise, for the plaintiff.

*H. F. Buswell,* for the plaintiff.

*C. Robinson, Jr.,* for the defendant.

DEVENS, J. If Farr was an officer *de facto,* the validity of the service by him of the notice to take the poor debtor's oath cannot be inquired into collaterally. *Coolidge* v. *Brigham,* 1 Allen, 333. In order to show that he was not, the plaintiff relies upon the statement of Bigelow, C. J., in *Fitchburg Railroad* v. *Grand Junction Railroad,* 1 Allen, 552, 557, that "the exact distinction between an usurper or intruder, and an officer *de facto,* is this : the former has no color of title to the office ; the latter has, by virtue of some appointment or election." If this were intended as a general definition of an officer *de facto,* it would be incomplete, but the inquiry there presented to the court was as to the validity of certain acts done by one who acted under a commission *primâ facie* valid, and issued by an authority apparently empowered to invest him with the legal rights and powers of the office to which he was appointed, and it is to be limited to the case then before the court. The reason of public policy, upon which it is held that the acts of an officer *de facto* are not to be called in question collaterally, but are valid as to third persons, may apply even to the case where such officer is a usurper and intruder. This principle has been applied in England to the most important office ; after Edward IV. obtained the crown, the kings of the line of Lancaster, who had preceded him, were spoken of as "*nuper de facto et non de jure reges Angliæ,*" but although Henry VI. had been declared a usurper by act of Parliament, attempts aga'nst his

authority (not having been in aid of the rightful king) were cap-itally punished. 1 Bl. Com. 204. 4 Bl. Com. 77. Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office, even so far as to see that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acquiesced in, they are entitled to treat him as such officer, and, if they employ him as such, should not be subjected to the danger of having his acts collaterally called in question. *Brown* v. *Lunt*, 37 Maine, 423. *State* v. *Carroll*, 38 Conn. 449. If the party thus recognizing the officer *de facto* were aware that such officer had some appointment or election, it would strengthen his belief, but without this he would be justified in believing that an authority publicly exercised and assented to was rightfully assumed. *Wilcox* v. *Smith*, 5 Wend. 231. The definition of an officer *de facto*, as given by Lord Ellenborough, in *The King* v. *Bedford Level*, 6 East, 356, which he generalizes from that of Lord Holt, in *Parker* v. *Kett*, 1 Ld. Raym. 658, 660, is " one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law," and the above suggestions are in accordance with this definition. In the opinion in *People* v. *Collins*, 7 Johns. 549, relied on by the plaintiff, it is held that the commissioners, whose acts were there in question, were officers *de facto*, as they came into their office by color of title; and it is added that " it is a well settled principle of law that the acts of such persons are valid when they concern the public, or the rights of third persons who have an interest in the act done."

The principle, upon which the acts of officers *de facto* have been held valid, has sometimes been extended, so far as to protect them, under certain circumstances, when they have been directly proceeded against. The question then presented is not the same as that where the rights of third persons only are involved, and in such cases it would not be sufficient that they had publicly exercised such office, but they might properly be called upon to show they did so by virtue of some appointment or election, which they had a right to believe valid, even if it were otherwise. *State* v *Carroll, ubi supra.*

It was shown in the present case that Farr was "notoriously acting" as constable, having an office in Boston, and upon its door his name with the addition of the word "constable;" and as to third persons he must be deemed an officer *de facto*.

Were it necessary in order to maintain his proceeding to show that he had color of title by some appointment or election, it would not perhaps be difficult to do so. Farr had originally a proper appointment, and even if he, who wrongfully holds over after the term for which he is appointed has expired, and this is known to him, cannot be said to hold by color of title, there are many cases where this expiration cannot be clearly ascertained. He who thus continues to hold his office erroneously but under a claim of right honestly and reasonably made has color of title from his original appointment or election. *Crew* v. *Vernon*, Cro. Car. 97. These considerations have rendered it unnecessary to determine whether Farr was an officer *de jure*.

*Judgment affirmed.*