ATTORNEY GENERAL *vs.* WILLIAM P. CROCKER & others.

Franklin.    Sept. 16, 17, 1884. — Jan. 9, 1885.    C. ALLEN & COLBURN, JJ.,
absent.

The authority of tellers, appointed to aid in checking the names of voters and
in assorting and counting the votes cast at a town meeting, in accordance with
the St. of 1883, *c.* 229, does not cease with the resignation of the moderator who
appointed them, before they have reported the result of the votes.

The record of a town meeting showed that a moderator was chosen with the use
of the check list; that a vote was then passed that the check list be used in
the election of town officers and upon the question of granting licenses, and
no other, without a vote of at least one half the meeting; that the moderator
resigned; and that another person was elected moderator, and acted as such.
*Held*, that, whether the record showed that this person was elected by ballot
and by the use of the check list or not, it sufficiently showed that he was a
moderator *de facto*.

At a town meeting, after the votes for town officers had been cast, but before
the result was announced, the moderator and clerk resigned their offices.  The
selectmen, who were not present at the meeting, appointed, in writing, C. town
clerk *pro tempore.*  C. appeared and was duly sworn, and made a record of his
appointment and qualification, and of the subsequent doings of the meeting,
which included the election of a moderator, the announcement of the vote for
town officers, the declaration of the persons elected, the vote to adjourn the
meeting, and the resignation of C. as clerk *pro tempore.*  *Held*, on an information
by the Attorney General in the nature of a *quo warranto* against the persons
elected, that C. was a town clerk *de facto* at the meeting, although the select-
men had no authority, under the Pub. Sts. *c.* 27, §§ 80, 97, 98, to appoint a clerk
at that time, and notwithstanding one voter protested against the validity of
the election; that his record was admissible in evidence; and that the officers
elected were entitled to their offices.

W. ALLEN, J.   This is an information in the nature of a *quo
warranto* to try the title of the respondents, respectively, to the
offices of town clerk and selectmen of the town of Montague,
which it is alleged they have usurped.  The facts, as they appear
from the report of the single justice of this court who heard the
case, are as follows :

At the annual town meeting on March 3, 1884, a moderator
was duly chosen and tellers were duly appointed by him to aid
in checking the names of the voters and in assorting and count-
ing the votes, according to the St. of 1883, *c.* 229.   After the
votes for town officers, including the town clerk, were all cast,
and after they were assorted and counted by the tellers, and
while they were putting the results into form for announcement

to the meeting, the moderator and clerk resigned their offices. No question is made that their resignations created legal vacancies in their offices, and we have not considered the effect in that respect. After their resignations, other persons acted as moderator and clerk; it was voted to hear the report of the tellers, and they reported the votes, which showed the election of the respondents and other officers; and the votes were announced, and the officers declared elected.

The principal objection to the title of the respondents to their offices is, that the proceedings of the meeting after the resignation of the moderator and clerk were illegal and void, because their successors were not legally chosen.

Another objection is, that the authority of the tellers ceased with that of the moderator who appointed them. But they were appointed to assist the moderator officially, and not personally, and their authority would survive a change in the person of the moderator. They continued to be lawful tellers.

It is also objected that the record does not show that the check list was used in the choice of the second moderator, or that he was chosen by ballot, but only states that he was elected. After the first moderator had been twice chosen, the second time with the use of the check list, the admitted record shows that it was " voted that the check list be used in the election of town officers, and upon the question of granting licenses, and no other, without a vote of at least one half the meeting." There is no other record of the use of the check list. Its use was as necessary to the election of the selectmen and town clerk as of a moderator. Pub. Sts. *c.* 27, § 80; *c.* 7, § 9. In *Andrews* v. *Boylston*, 110 Mass. 214, a record, " Voted, to reëstablish the school district system," was held insufficient, the statute requiring the votes of two thirds of all the legal voters present and voting. The court say, " The form of expression is that which is ordinarily used in setting forth the vote of a mere majority; and there is nothing on the face of the record to indicate that either the officers or the voters had their attention called to the fact that the law required a two-thirds vote." See also *Morrison* v. *Lawrence*, 98 Mass. 219; *Judd* v. *Thompson*, 125 Mass. 553. In the case at bar, the matter concerns the mode of voting, and not the essentials of the vote; and the admitted record shows

that the meeting intended to use the check list, and that the fact that it was required was in the minds of the voters. We are inclined to the opinion that the record, if competent, shows that the second moderator was an officer *de jure*. See *Howard* v. *Proctor*, 7 Gray, 128. We do not decide this, because the reasons which render the record competent show that the moderator was a good officer *de facto*, if not one *de jure*.

The principal question relates to the town clerk. A moderator and clerk are essential to a town meeting for the choice of town officers, and there cannot be a record without a clerk. In the absence of a moderator, and for the choice of one, the clerk presides, and, in his absence, the selectmen. Pub. Sts. *c*. 27, §§ 58, 59. At that meeting, the clerk to be chosen was voted for with the selectmen and other officers, and the vote had not been declared when the moderator and clerk resigned, and their offices are assumed to have become vacant. The selectmen appear not to have been present. After several hours, one of the selectmen came into the meeting and read a paper signed by the selectmen as follows : " Montague, March 3, 1884. William O. Crocker is hereby appointed town clerk *pro tempore*, in place of J. H. Root, resigned." Said Crocker was duly sworn, and made a record in the book of town records of his appointment and of the subsequent doings of the meeting, the last entry, made after that of the vote to adjourn, being of his own resignation as clerk *pro tempore*. This record is sufficient, if competent, to show that the respondents were duly elected. On March 6, a town clerk was duly appointed by the selectmen and sworn, who, on March 8, administered the oath of office to the respondents, and made a record thereof. No objection is made that the respondents were not duly qualified, if elected ; and the question is whether the record made by William O. Crocker, as clerk, is competent, — in other words, whether the act of the meeting in receiving the report of the tellers and declaring the election of the respondents, was invalid for want of officers, and incapable of proof for want of a record. The former clerk completed the record to, and including, his own resignation. What is contained in the disputed record is the appointment and qualification of the clerk *pro tempore*, the election of a moderator, the vote to hear the report of the tellers, and their report that the

vote was announced and the election declared; that one voter protested as to the validity of their election; and the vote to adjourn to March 10.

That William O. Crocker had no lawful authority to act as town clerk at the meeting is clear. Section 80, of the Pub. Sts. c. 27, provides that the election of town clerks shall be by written ballots. Section 97 provides that, when there is a vacancy in the office of town clerk at a town meeting, or when he is not present, the voters present shall elect a clerk *pro tempore* in the same manner as town clerks are chosen, who shall be sworn to discharge the duties of said office at said meeting. Section 98 provides that, when other duties than those mentioned in the preceding section are required to be performed by a town clerk, and there is a vacancy in the office, or the clerk is prevented from performing such duties, the selectmen may in writing appoint a clerk for the performance thereof, who shall be sworn, and shall make a record of his appointment. The selectmen had no authority to appoint a clerk for the town meeting, and the appointment made by them gave the appointee no authority to act as such. But this is not a proceeding against him to test his title to the office, but one in which the rights of third persons and of the public, acquired by virtue of his official acts, are concerned, as to whom the official acts of a public officer *de facto* are as valid as if he held the office *de jure*. There can be no doubt that the principle applies to the office of town clerk. Suppose a town clerk to be regularly elected and qualified, except that the check list was not used, and to exercise the functions of the office during the year for which he was so elected. He would at no time have been lawfully the town clerk, or able to maintain his own right to the office; but his official acts, whether in recording the doings of town meetings, or in the performance of other duties of the office, would be as valid, as to all other parties, as if he had been town clerk *de jure*. The illustration shows the reasons of public policy and of private justice upon which the rule is founded. It applies to a town clerk as presiding and recording officer of a town meeting, and the question upon which the competency and sufficiency of the record we are considering depends is whether William O. Crocker was, when so acting, town clerk *de facto*.

An officer *de facto* may be said to be one who assumes the functions of an officer under color of title of the office. The definition cited and approved in *Petersilea* v. *Stone*, 119 Mass. 465, and sustained by the decision in that case and by the authorities cited in the opinion, is, " One who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." These are very general statements, and afford only a starting point for the consideration of particular cases. What is color of office, and what facts show that one assumes and is reputed to hold a particular office, are left open questions, and perhaps no statement of them can be found sufficiently comprehensive and particular to be applicable to the circumstances of every case which may arise.

The relators contend that, upon the facts of this case, there was neither an assumption of the office under color of title, nor a reputation of holding it, within the meaning of the law. That William O. Crocker assumed to have been duly appointed town clerk, and that he took the oath and performed the duties of the office under a claim of title to it, cannot be questioned. The relators contend that this is not sufficient, unless the office is assumed under color of an election or appointment by some body or person authorized to elect or appoint to the office. No decision is cited in support of this position, though some definitions of the term officer *de facto*, made as applicable to particular facts, may seem to favor it. The authorities to the contrary are numerous and decisive. Among them are *Fowler* v. *Bebee*, 9 Mass. 231, and *Petersilea* v. *Stone*, *ubi supra*, the latter of which is directly in point. The question is discussed, and the cases bearing upon it fully cited, in the elaborate and able opinion by Chief Justice Butler in *State* v. *Carroll*, 38 Conn. 449.

It is further contended that, because the office was claimed under the selectmen, who had no authority to appoint to it, and the claim was made, and the acts under it performed, in the presence of and in relation to the body which had the rightful power of electing to the office, such acts cannot show either an assumption of the office, or a reputation of holding it, and are insufficient to prove that the person performing them was an officer *de facto*. The presence and conduct of the person

authorized to appoint to an office, when another person acts as holding the office under a stranger, may be evidence, but cannot be conclusive upon the public or upon third persons. Such evidence may tend to prove that the assumption is a pretence, and that the pretender is reputed not to be an officer; or it may be such as to tend strongly to prove an assumption as of right, and a reputation of holding the office. If it showed assent or acquiescence of the body which had the right of appointment, it would have that effect; if it showed dissent or opposition, it would not be conclusive the other way. The protest made by a single voter, after the respondents were declared elected, " as to the legality of their election," is certainly not conclusive that William O. Crocker was not reputed to be town clerk. The protest was not against the appointment of the clerk *pro tempore*, but the election of the regular town officers, and it does not show whether it was upon the ground still insisted on, that the tellers had no authority to act under another moderator than the one who appointed them, or for some other reason. Had the reason of the protest been the invalidity of the appointment of the clerk, it would properly and probably have been made when he assumed the office. The acquiescence of the voter until the election of officers was declared, and the confining of the protest to the election of those officers, with the consideration that there was an obvious fact which has been supposed to render their election illegal, and which had no connection with the validity of the appointment or acts of the clerk *pro tempore*, indicate that the effect of the protest, whatever that may be, should be expended upon the election of the officers to which it referred; and it is admitted in the argument for the relators that they are officers *de facto*, whose acts as such are valid.

It makes no difference whether the appointment by the selectmen is construed as an appointment of clerk of the town meeting, in which case it would be void, or as an appointment, which they had the power to make, to perform the other duties of the town clerk, in which case it would not purport to authorize the appointee to act as clerk at a town meeting. It appears clearly from the facts, that he assumed the office of clerk of the town meeting under color of the appointment, and whether he did it

under an illegal appointment from the selectmen, or by an illegal assumption of power under a legal appointment, is immaterial.

The facts show that William O. Crocker, claiming a due appointment, assumed the office of clerk of the town meeting; that he was duly sworn as such, and made a record of his appointment and qualification; that he presided at the choice of moderator, and performed the duties of clerk until the adjournment of the meeting; that the meeting acquiesced in his assumption, and treated him as its lawful officer; and that no objection or suggestion that he was not the lawful officer was made by any individual while he assumed to hold the office, — unless the protest, which has been considered, of a single voter, just at the adjournment of the meeting, to other action of the meeting, could be so considered. Upon these facts, without considering the further facts urged by the respondents, that the person who protested, subsequently, under an appointment as town clerk from the selectmen, administered the oath of office to the respondents against whose election he had protested, and that at the adjournment of the same meeting the record in question was read and approved, it is clear that William O. Crocker was reputed to be town clerk at the meeting, and was clerk *de facto*.

The question concerns the public; there are no contestants to the offices held by these respondents, and there was none to the office assumed by William O. Crocker. It is a question of public policy in regard to the validity of the doings of a town meeting as to persons claiming rights by virtue of them. The facts are extraordinary. An annual town meeting, after being fully organized, was deprived of its moderator and clerk. The selectmen were not present. The necessary business of the meeting could not be proceeded with until after a moderator and clerk should be chosen, and that could be regularly done only by ballot, with the use of the check list. No one but the selectmen was authorized to receive ballots or use the check list, and the meeting, even if it could act, had no power to compel their presence. Under these circumstances, if a person appointed by the general voice of the voters present for the purpose, had assumed to act as moderator while a clerk was chosen and qualified in due form, we are not prepared to say that his acts would not have been valid as acts of a moderator *de facto*,

although he and every voter present should have known that he was not legally elected, and was not a good officer in point of law. But this case presents no such question. After the proceedings of the meeting had been suspended for several hours, a person appeared showing an appointment which he claimed made him lawful clerk, and assumed the office and performed its duties with general assent. There is no reason to doubt that he was universally reputed to be, not only acting, but legal clerk. But if all opposed to carrying on the meeting had opposed and protested against his appointment, the meeting still accepting him as clerk, we think he would have been clerk *de facto*.

Public necessity and policy require that the acts of an actual incumbent of a public office, in the performance of its duties, shall be held valid, although the incumbent should not have a legal right to the office, and though his right should be questioned and disputed. A single illustration will suffice. The act establishing the county of Hampden was passed in February, 1812, to take effect on the 1st day of the next August. In May, Governor Gerry, whose term expired on the last Wednesday of that month, appointed the officers for the expected county, including the judge of probate and the sheriff. The Governor had no more authority to make these appointments than the selectmen in the case at bar had to appoint the clerk of the town meeting, and they were void. *Commonwealth* v. *Fowler*, 10 Mass. 290. The acts of the officers and of their deputies were valid, as acts of officers *de facto*. *Fowler* v. *Bebee, ubi supra*. As these appointments were made a short time before the expiration of the term of office of the Governor, and as he was of a different political party from that of the incoming Governor, who alone had power to make the appointments, it was natural that the authority to make the appointments should be questioned, and that all the facts showing them to be invalid should be generally known and discussed, and the right of the incumbents to their offices denied by a large portion of the public. That this was so may be inferred from the fact that the information against the judge of probate was filed in accordance with a vote of the House of Representatives. It cannot be argued that such facts, if they existed, made the acts of the actual incumbents invalid, nor that the fact that acts were performed in the

presence of the Governor who had the power of appointment, could make any difference in their validity. Had Governor Strong offered himself to the acting judge of probate as attesting witness to a will, the oath administered to him would unquestionably have been legal, and so would the probate of a will admitted by the usurping judge in the presence and against the protest of the Governor.

The public and parties, having rights depending upon official acts, are not so much concerned with the title to an office, as they are that the duties of the office shall be performed, and the rights depending upon their performance secured and protected ; and, when they find an actual incumbent of an office performing its duties, they have a right to rely upon his acts as done by virtue of the office.                          *Information dismissed.*

*W. S. B. Hopkins*, for the relators.

*W. Gaston*, (*D. W. Bond* with him,) for the respondents.