CITY OF LAWRENCE *vs.* COMMISSIONERS OF PUBLIC WORKS & another.

Suffolk. May 11, 1945. — September 14, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, WILKINS & SPALDING, JJ.

*Public Officer. Evidence,* Presumptions and burden of proof. *Certiorari. Public Works. Time. Municipal Corporations,* Water supply. *Public Health. Practice, Civil,* Question of law or fact.

A city authorized to take water from a river for its public water supply had an interest, different in kind from that of members of the public in general, sufficient to entitle it to maintain a certiorari proceeding

seeking to quash the granting by the department of public works of a license to lay and maintain a pipe line for oil across the bed of the river above the city's intake.

Nothing in the provisions of G. L. (Ter. Ed.) c. 111 conferring control of sources of water supply upon the department of public health prevented the department of public works from proceeding under c. 91, § 12, to grant a license to lay and maintain a pipe line for oil across the bed of a river above the point where a city took water from the river for its public water supply.

In a certiorari proceeding to quash the granting of a license by the department of public works, facts relating to the resignation of one of the associate commissioners of the department, which were material to its jurisdiction to grant the license but did not appear in the return of the department, might be shown outside the return.

The question of the effective time of a resignation by a public officer, resulting solely from an acceptance in writing by the Governor of a tender in writing of resignation by the officer, was not a question of fact but must be determined as matter of law upon a construction of the writings.

A resignation of office by an associate commissioner of the department of public works, tendered in writing in November "to take effect not later than December 15" and accepted by the Governor in writing in November "as of December 15," was effective throughout the whole of that day by reason of the rule against splitting the day; and therefore a purported participation by the former associate commissioner in the granting of a license by the department at some time during that day was not done by him as an associate commissioner de jure.

In a certiorari proceeding to quash the granting of a certain license by the department of public works on the ground that a vote and signature essential to the validity of the license, purporting to be by an associate commissioner, were ineffectual because, on the very day of such action, his resignation as associate commissioner had taken effect and he therefore had ceased to be an associate commissioner de jure, at least the burden of going forward with evidence, if not the true burden of proof, on a contention that he had acted as an associate commissioner de facto, which would establish validity of the license, was on the department, and proof only of his vote and signature was not evidence to support the contention; FIELD, C.J., and DOLAN, J., dissenting and being of opinion that the burden of proving that the resigned associate commissioner had not acted as a public officer de facto was on the petitioner, who was contending lack of jurisdiction in the department, and that such burden was not sustained.

PETITION for a writ of certiorari, filed in the Superior Court on January 15, 1945.

The case was heard by *Williams*, J.

In this court, the case was argued at the bar in May, 1945, before *Field*, C.J., *Qua*, *Ronan*, & *Wilkins*, JJ., and

afterwards was submitted on briefs to all the Justices except *Lummus, J.*

*J. P. Kane,* City Solicitor, for the petitioner.

*R. Clapp,* Assistant Attorney General, for the respondents.

QUA, J.   On December 15, 1944, the department of public works by a vote of two out of the three commissioners purported to grant to Colonial Beacon Oil Company a license to lay and maintain a four inch pipe line across the bed of Merrimack River between the towns of Andover and Dracut at a distance stated at the hearing before the commissioners to be about four miles above the intake of the water supply system of the city of Lawrence.   The department assumed to act under the authority of G. L. (Ter. Ed.) c. 91, § 12, which authorizes it to license and to prescribe the terms of construction of structures (pipe lines, § 1) in certain rivers, including the nontidal part of Merrimack River, and which declares unlicensed structures to be public nuisances.   The city brought this petition in the Superior Court to quash the proceedings of the department which resulted in the granting of the license, and now appeals from a final judgment adverse to it in that court and from certain interlocutory orders made in the course of the proceedings.   G. L. (Ter. Ed.) c. 213, § 1D, as inserted by St. 1943, c. 374, § 4.

1. The Attorney General in his brief in behalf of the respondents assumes that inasmuch as the department gave notice of the hearing before it to all the world, and as the city appeared and was the principal objector before the department and was so situated that it and its inhabitants might conceivably suffer damage from a pipe line for oil or its products in the river above it, the city had such interest in the matter as would entitle it to bring this petition.   By St. 1872, c. 79, the city of Lawrence was authorized to take water from Merrimack River for the use of the city and its inhabitants.   In view of the importance to any municipality of its public water supply and of the unfortunate consequences that might result if that supply should become polluted with oil or oil products containing lead through

breaks or leaks in a pipe line, and in view of the responsibility of the city to its water users for the purity of its water (*Horton* v. *North Attleborough,* 302 Mass. 137), we think that the city has an interest in the construction of the pipe line different in kind from that of members of the public in general, and that the city is therefore in a position to bring this petition. See *Powers* v. *City Council of Springfield,* 116 Mass. 84, 87; *Natick Gas Light Co.* v. *Natick,* 175 Mass. 246, 252; *Putnam* v. *Boston & Providence Railroad,* 182 Mass. 351, 354; *Munn* v. *Boston,* 183 Mass. 421; *Hyde* v. *Fall River,* 189 Mass. 439, 440; *New York, New Haven & Hartford Railroad* v. *Deister,* 253 Mass. 178; *American Can Co.* v. *Milk Control Board,* 313 Mass. 156, 160–161, and cases cited. Compare *Davis* v. *County Commissioners of Hampshire,* 153 Mass. 218; *Warner* v. *Mayor of Taunton,* 253 Mass. 116, 118; *Dube* v. *Mayor of Fall River,* 308 Mass. 12, 14–15. The interest of the city is so different from that of a mere private landowner that it is not necessary to decide whether every riparian proprietor below the proposed pipe line would also have standing as a petitioner.

2. We are not impressed by the city's argument that the department of public works could not grant the license because of the control over sources of water supply conferred upon the department of public health by the provisions of G. L. (Ter. Ed.) c. 111, particularly § 5 and §§ 159 to 174A. We find nothing in c. 111 which affects the power to grant licenses expressly conferred upon the department of public works by c. 91, § 12, or which conflicts with the full exercise of that power. See *Stone* v. *Heath,* 179 Mass. 385, 388.

3. But the city presses another point of more difficulty. It appears from admissions not disputed and evidently accepted by the trial judge as true that one of the respondents, former Associate Commissioner Whipple, had, on November 18, 1944, written to the Governor requesting him to accept his resignation as associate commissioner of public works "to take effect not later than December 15" (the date of the granting of the license), and that on November 27 the Governor had accepted the resignation "as of December 15." We agree with the concession made by the

Attorney General at the argument that facts relating to the resignation of one of the commissioners would not commonly form part of the record of proceedings of the department relative to the granting of a license, and that such facts, not appearing in the return, may be shown outside of it. See *Marcus* v. *Street Commissioners of Boston,* 252 Mass. 331; *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 490; *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, 124–125. It therefore appears in this case that Associate Commissioner Whipple, whose vote and signature were necessary to the validity of the license (G. L. [Ter. Ed.] c. 91, §§ 12, 18), ceased to hold office on the very day on which he voted for and signed the license.

The question on this part of the case is not one of measuring a period of time expressed in days. That matter has been the subject of many decisions. The question here concerns the relation to each other of two inconsistent acts or events, each taking place upon the same day, the time of neither of which is fixed any more definitely than by reference to that day. It is a further peculiarity of this case that the time of the resignation is incapable of being more definitely fixed by any further evidence of facts but depends entirely upon the legal consequences of the written resignation and acceptance already described. It is a matter of the legal construction of the documents and not a question of fact in the ordinary sense. Both sides invoke the common law rule that the law takes no account of fractions of a day. The petitioner contends that Whipple's resignation was effective through the whole of December 15. The respondents contend that he remained in office through the whole of that day.

It is plain that Whipple's resignation by its terms and by the terms of its acceptance could not take effect at any moment of time which was later than the fifteenth. If it took effect earlier than the fifteenth, the license was invalid. But if, as we assume, it took effect on the fifteenth, it must have taken effect at some moment lying within the confines of that day, and the rule against splitting the day demands that no one moment of that day any more than

any other moment be singled out as the moment when it took effect.  The last moment within the day cannot be chosen, since that would leave the resignation, which by hypothesis took effect on that day, ineffective during all but the last moment of the very day on which it took effect, thus splitting the day.  The practical result, as applied to a case like the present one, seems to be that "a thing done at any time in a day is taken the same as though it had been done in the first minute of the day."  *Mathewson* v. *Ham,* 21 R. I. 203, 204.  *In re Lawson,* 30 Del. 338, 342. *Wallace* v. *McDaniel,* 59 Ore. 378, 386.  See *Miniard* v. *Lewis,* 206 Ky. 125, 126.  This accords with the common law rule that an infant becomes of age "at the earliest minute" of the day preceding the twenty-first anniversary of his birth.  *Bardwell* v. *Purrington,* 107 Mass. 419, 425. Williston on Contracts (Rev. ed.) § 224.  Another way of putting the matter in the case before us would be to say that at whatever moment on December fifteenth the license is deemed to have issued, Whipple's resignation, since the day is indivisible, must be deemed in effect at that moment. The view we take is not inconsistent with the decision in *Kennedy* v. *Palmer,* 6 Gray, 316, since in that case the statute was not to take effect upon some designated future day, with no hour fixed, and so leaving the precise time to be ascertained by the application of a rule of law, but was to take effect immediately upon being signed by the Governor, a moment capable of ascertainment through proof.

The only exactly similar case which we have seen, *Loughran* v. *Mayor & Aldermen of Jersey City,* 86 N. J. L. 442, holds that a resignation to take effect May 4, became effective at the stroke of midnight of May 3.

4. In the discussion of the case in this court the suggestion has been made that Whipple might have been acting as an officer de facto during the day of December 15 even after his resignation took effect; that if he was an officer de facto the license was valid; and that the petitioner has not shown that he was not an officer de facto.

No such contention as this was made by any party at the argument or in the briefs.  There is nothing whatever in

the record before us to show that Whipple continued to act as a commissioner during the day of December 15, or that he purported to exercise any of the functions of his office for a single moment after his resignation took effect, except that he purported to take part in granting the license in question. Proof of the performance of the very act in question is not in itself even evidence that the one performing it was an officer de facto. *Short* v. *Symmes*, 150 Mass. 298. If it were, any usurper could create evidence that he held an office by purporting to perform some single act pertaining to that office. On the contrary it is almost, if not quite, universally held that a person cannot become an officer de facto without something approaching a general exercise of the functions of the office in such a way as to create an appearance of office holding and to involve some degree of recognition of the person by the public as the holder of the office. This requirement is fully accepted in our more recent cases and has been met in those instances in which it has been held that a person was an officer de facto. The cases are collected in the footnote.[1] See also *Waite* v. *Santa Cruz*, 184 U. S. 302, 323 (quoting from *Petersilea* v. *Stone*, 119 Mass. 465, 468); Mechem on Public Officers, §§ 315–321; Throop on Public Officers, §§ 626–628; 46 C. J., Officers, §§ 366, 368, and cases collected; 43 Am. Jur., Public Officers, §§ 477, 478, and cases collected.

There can be no presumption that an officer who has just completed his resignation continues on as an officer de facto. Continuing to exercise the functions of the office even for a single day is in a broad sense inconsistent with the act of resigning. To hold without evidence that a former officer who purports to perform an official act shortly after he has ceased to hold office has performed that act as an officer de facto is to establish something in the nature of a

[1] *Commonwealth* v. *Kirby*, 2 Cush. 577, 581. *Coolidge* v. *Brigham*, 1 Allen, 333, 334–335. *Fitchburg Railroad* v. *Grand Junction Railroad & Depot Co.* 1 Allen, 552. *Petersilea* v. *Stone*, 119 Mass. 465. *Sheehan's Case*, 122 Mass. 445. *Attorney General* v. *Crocker*, 138 Mass. 214, 220. *Clark* v. *Easton*, 146 Mass. 43, 45. *Damon* v. *Carrol*, 163 Mass. 404, 409. *Commonwealth* v. *Wotton*, 201 Mass. 81. *Moloney* v. *Selectmen of Milford*, 253 Mass. 400, 405, 407. *Commonwealth* v. *DiStasio*, 297 Mass. 347, 352.

presumption at variance with the laws regulating office holding, likely to introduce conflict and confusion, and generally dangerous in its possible consequences. Reason and practical considerations of justice alike require that when in the trial of a cause the question arises whether a person who was not the holder of an office de jure was an officer de facto, at least the burden of going forward with evidence of that fact, if not indeed the true burden of proof itself, should rest upon the party asserting the fact. In general, offices are held de jure, and it is important that they should be so held. The holding of an office de facto even for a day, is an unusual and anomalous situation. Office holding de facto is a fiction of the law designed to serve a useful purpose, but the fiction does not abolish the law. A de facto "officer" is not an officer, although his acts may have legal effect. A litigant ought commonly to be able to rely upon the statutes and the public records to determine who is a public officer. He should not be called upon to meet in advance a possible contention by his adversary that one not entitled to an office has acquired its powers by exercising them. See *Epstein* v. *Boston Housing Authority*, 317 Mass. 297, 300–301. When the petitioner proved that Whipple was not in office on December 15 it went as far as it was required to go. A contention that, although not an officer, he was exercising the functions of the office as an officer de facto would require proof of new facts — the facts showing such exercise — to avoid the effect of the fact first proved and would be in the nature of confession and avoidance. If the respondents desired to make this contention (and it does not appear that they desired so to do), it was at least incumbent upon them to go forward with the necessary evidence, and it may well be that the actual burden of proof was upon them. The broad governing principle was concisely but fully explained by Chief Justice Shaw over a century ago in *Powers* v. *Russell*, 13 Pick. 69, 76–77, and has been constantly followed ever since. A few of the many illustrative cases are *Morrison* v. *Clark*, 7 Cush. 213, *Crowninshield* v. *Crowninshield*, 2 Gray, 524, 531, *Sayles* v. *Quinn*, 196 Mass. 492, 495, *Hughes*

v. *Williams,* 229 Mass. 467, 470, *Smith* v. *Hill,* 232 Mass. 188, and *Neu* v. *McCarthy,* 309 Mass. 17, 24. See *Hill* v. *Smith,* 260 U. S. 592, 594. See also discussion in Wigmore on Evidence (3d ed.) §§ 2485, 2486.

All cases which have come to our attention from other jurisdictions bearing upon the burden of proof as to a de facto officer, with one doubtful exception, tend to sustain the view herein expressed. *Sandlin* v. *Dowdell,* 143 Ala. 518, 522. *Loughran* v. *Mayor & Aldermen of Jersey City,* 86 N. J. L. 442. *Hughes* v. *Long,* 119 N. C. 52, 55–56. *Bernier* v. *Becker,* 37 Ohio St. 72, 73. The possible exception is *Macey* v. *Stark,* 116 Mo. 481, 504, but that case seems to rest upon the prima facie character of certain certificates under seal of court.

We cannot treat Whipple as an officer de facto in the absence of any proof that he was such.

It follows from what has been said that the license is invalid.

One Hale, who signed the license and also the return in this cause as director of the division of waterways, does not appear to be a member of the department and should not have been joined as a party respondent. *Weston* v. *Railroad Commissioners,* 205 Mass. 94, 98.

The appeals from interlocutory orders have become immaterial.

The interlocutory appeals are dismissed. The final judgment is reversed, and final judgment is to be entered dismissing the petition as to the respondent Hale and quashing the proceedings of the department of public works and the purported license issued by that department.

*So ordered.*

FIELD, C.J. I do not agree with the opinion. I think that the record does not show that the license was invalid and consequently I think that the license should not be quashed.

The majority of the court reaches the conclusion that the license was invalid on the ground that it appears that Associate Commissioner Whipple's resignation of his office took

effect before the license was granted so that he could not be counted as one of "a majority of the commissioner and associate commissioners" whose concurrence was necessary for the granting of the license. G. L. (Ter. Ed.) c. 16, § 4. I do not agree with this conclusion.

The question whether Whipple's resignation of his office had taken effect before the license was granted on December 15, 1944, related to his title to the office on that day, that is, to the question whether on that day he was an officer de jure. But the validity of the license does not depend upon Whipple's having had legal title to the office at the time the license was granted. This "is not a proceeding against him to test his title to the office, but one in which the rights of third persons and of the public, acquired by virtue of his official acts, are concerned, as to whom the official acts of a public officer de facto are as valid as if he held the office de jure." *Attorney General* v. *Crocker*, 138 Mass. 214, 217. As was said in the *Crocker* case, "Public necessity and policy require that the acts of an actual incumbent of a public office, in the performance of its duties, shall be held valid, although the incumbent should not have a legal right to the office, and though his right should be questioned and disputed. . . . The public and parties, having rights depending upon official acts, are not so much concerned with the title to an office, as they are that the duties of the office shall be performed, and the rights depending upon their performance secured and protected; and, when they find an actual incumbent of an office performing its duties, they have a right to rely upon his acts as done by virtue of the office" (pages 221–222). This doctrine of de facto officers has been given broad application in this Commonwealth. See *Fowler* v. *Bebee*, 9 Mass. 231; *Petersilea* v. *Stone*, 119 Mass. 465; *Sheehan's Case*, 122 Mass. 445; *Moloney* v. *Selectmen of Milford*, 253 Mass. 400, 406–407; *Sevigny* v. *Lizotte*, 260 Mass. 296; *Commonwealth* v. *DiStasio*, 297 Mass. 347, 350–351.

The present case is not to be confused with cases where the title of an officer to his office is directly involved, such as an information in the nature of quo warranto to oust

him from the office (see G. L. [Ter. Ed.] c. 249, § 12; *Commonwealth* v. *Allen*, 128 Mass. 308, 311; *Attorney General* v. *Loomis*, 225 Mass. 372, 376; *Brierley* v. *Walsh*, 299 Mass. 292, 294–295; compare *Commonwealth* v. *Fowler*, 10 Mass. 290, with *Fowler* v. *Bebee*, 9 Mass. 231, and *Commonwealth* v. *Hawkes*, 123 Mass. 525, with *Sheehan's Case*, 122 Mass. 445), an action for salary or fees (see *Phelon* v. *Granville*, 140 Mass. 386, 389; *Short* v. *Symmes*, 150 Mass. 298, 300), or an action of tort for interference with the person or property of another justifiable only because done by a public officer. See *Short* v. *Symmes*, 150 Mass. 298, 299–300.

If Whipple was at least a de facto officer when the license was granted it was valid. And in my opinion the burden of proving that he was not at least a de facto officer was on the petitioner and this burden has not been sustained.

Upon a petition for a writ of certiorari the return of the respondents is "conclusive as to all matters of fact, within their jurisdiction, passed upon by them" (*Tewksbury* v. *County Commissioners of Middlesex*, 117 Mass. 563, 565–566; *Morrissey* v. *State Ballot Law Commission*, 312 Mass. 121, 124), although it was open to the petitioner under G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1, "to contend at the hearing upon the petition that the evidence which formed the basis of the action complained of or the basis of any specified finding or conclusion was as matter of law insufficient to warrant such action, finding or conclusion." However, a decision of respondents, express or implied, that they had jurisdiction would not necessarily be conclusive. A "petitioner may attack the jurisdiction of the inferior tribunal and may, if necessary, introduce evidence in support of his contention" (*Marcus.* v. *Street Commissioners of Boston*, 252 Mass. 331, 333; *Morrissey* v. *State Ballot Law Commission*, 312 Mass. 121, 124–125),. but the burden rests upon the petitioner "to prove by evidence outside the record, if necessary, that the respondents were without jurisdiction." *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 490. *Morrissey* v. *State Ballot Law Commission*, 312 Mass. 121, 125. The statutory requirement appli-

cable to the present case that "the concurrence of at least a majority of the commissioner and associate commissioners shall be necessary in every official act of the department" (G. L. [Ter. Ed.] c. 16, § 4) is not merely procedural. It relates to the jurisdiction of the department. Consequently, unless such a majority participated in the act of granting the license here involved, the department was without jurisdiction to grant it. See *Sesnovich* v. *Board of Appeal of Boston,* 313 Mass. 393, 398. Such a majority did not participate in the act of granting the license unless Whipple is to be regarded as so participating. The question whether he is to be regarded as so participating relates to the jurisdiction of the department to grant the license — a question depending upon whether he was at least a de facto officer when the license was granted. Consequently the question whether he was at least a de facto officer relates to the jurisdiction of the department and is within the principle that the burden of proving "that the respondents were without jurisdiction" rests upon the petitioner.

The issue whether Whipple was at least a de facto officer when the license was granted was a single issue, not a combination of the separate issues whether he was a de jure officer and whether he was a de facto officer, although facts bearing upon his standing as a de jure officer or as a de facto officer may be material upon the single issue. But proof that Whipple was not a de jure officer does not warrant a finding by way of inference that he was not a de facto officer. Even if he was not a de jure officer, he may have been a de facto officer, and evidence or the established fact that he was not the former would be insufficient to establish that he was not the latter, on the ground that it was more probable that he was not. See *Sargent* v. *Massachusetts Accident Co.* 307 Mass. 246, 250. Such a conclusion, in the absence of anything more than appears in the record, would be mere conjecture. Proof that Whipple was not a de jure officer creates no presumption or prima facie case that he was not a de facto officer. Such proof does not split the burden of proof resting upon the petitioner of the single issue and shift to the respondents the burden of

going forward with evidence or of establishing that Whipple was a de facto officer. Such a shift of burden as to a part of the single issue cannot be justified on the ground that evidence as to whether Whipple was a de facto officer might be more readily available to the respondents than to the petitioner. And such a shift of burden is particularly inappropriate upon a petition for a writ of certiorari, which is not an adversary procedure in the ordinary sense but is a proceeding for the correction of errors in the proceedings of the respondents, upon their return to the petition or writ setting forth such proceedings, where the burden of showing lack of jurisdiction of the respondents of such proceedings, if not shown by the return, rests upon the petitioner.

In my opinion the burden of proof, resting upon the petitioner, that Whipple was not at least a de facto officer at the time the license was granted, has not been sustained. Although the facts shown by the record may be sufficient to establish the fact that Whipple was not a de jure officer, they are not, in my opinion, necessarily inconsistent with his having been a de facto officer and are insufficient, without more, to establish the fact that he was not at least a de facto officer. In considering hereinafter facts not shown by the record I do not intimate what, if any, of these facts, if shown, would establish that Whipple was not at least a de facto officer.

The record does not show that any successor to Whipple had been appointed. Indeed, the record perhaps may be interpreted as showing affirmatively that no successor to him had been appointed.

The facts that Whipple had resigned, that his resignation had been accepted, and that the resignation had taken effect before the license was granted, although showing that he had ceased to be an officer de jure, were not necessarily inconsistent with his being an officer de facto. It cannot, in my opinion, be ruled as matter of law that an officer whose resignation has taken effect cannot thereafter in any circumstances be an officer de facto. I know of no sound reason why the doctrine of de facto officers should not be applied to an officer whose resignation has taken effect but

who has continued, without interruption, to be the "actual incumbent" of the office, in the sense in which those words were used in *Attorney General* v. *Crocker*, 138 Mass. 214, 221, "in the performance of its duties." And I think that this is true even if "color of title" is an essential characteristic of a de facto officer — as to which there is some doubt. See *Petersilea* v. *Stone*, 119 Mass. 465, 467–468.

It is readily conceivable that Whipple was within the language of the *Petersilea* case applied in that case to an officer whose term for which he was appointed had expired. It was there said: "He who thus continues to hold his office erroneously but under a claim of right honestly and reasonably made has color of title from his original appointment or election" (page 469). It is readily conceivable that under the language of Whipple's resignation "to take effect not later than December 15," and the Governor's acceptance thereof "as of December 15," Whipple continued to hold his office on December 15 "under a claim of right honestly and reasonably made." The time at which the resignation took effect is not wholly free from doubt although, for reasons stated in the opinion of the majority, I am led to the conclusion that it took effect before the license was granted. But it is not shown that Whipple did not continue to hold his office "under a claim of right honestly and reasonably made" even if erroneously.

And, to my mind, "color of title" in Whipple, if necessary to constitute him a de facto officer, may exist even if his resignation was such a fact "as third persons and the public are, as a general rule, required to take notice of." See *Loughran* v. *Mayor & Aldermen of Jersey City*, 86 N. J. L. 442, 444. And even if it was such a fact, it would not necessarily prevent him from being a de facto. officer. To hold that the doctrine of de facto officers is inapplicable to cases where third parties and the public are, as a general rule, required to take notice of the termination of the de jure tenure of officers would impose a stricter limitation upon the doctrine of de facto officers than has been recognized by the decisions in this Commonwealth, and would prevent the application of the doctrine in cases within the purpose of

.the doctrine in the interest of "public necessity and policy." See *Attorney General* v. *Crocker*, 138 Mass. 214, 221.

In *Sheehan's Case*, 122 Mass. 445, a special justice of a police court, one Hawkes, continued to perform the duties of the office after he had been elected to the House of Representatives and had taken his seat, notwithstanding the provision of art. 8 of the Amendments to the Constitution that "No judge of any court of this commonwealth (except the court of sessions) . . . shall, at the same time, . . . have a seat in the senate or house of representatives of this commonwealth." It was held that even if this special justice had ceased to be a justice de jure, he was a justice de facto. (In *Commonwealth* v. *Hawkes*, 123 Mass. 525, upon an information by the Attorney General to try the title of this special justice to his judicial office, the court held that he had "legally vacated his judicial office," on the principle that his "acceptance of the second office is in law an implied resignation of the first" [pages 529–530]). It is rather difficult to see why third parties and the public were not under as great a duty to take notice of the facts in *Sheehan's Case* as were third parties and the public to take notice of the resignation of Whipple and the acceptance thereof by the Governor as disclosed by correspondence between Whipple and the Governor, the interpretation of which involved a question of law as to which laymen, if not lawyers and judges, might honestly differ. It follows that even if Whipple's de jure tenure of his office came to an end by reason of the acceptance of his resignation that fact did not necessarily preclude his being a de facto officer after his tenure as a de jure officer had come to an end.

The conclusion that the termination of Whipple's tenure as officer de jure would not necessarily preclude his being a de facto officer after he ceased to be a de jure officer is in accordance with general public policy that governmental duties are not to go unperformed for lack of an officer to perform them. The "public and parties, having rights depending upon official acts, are not so much concerned with the title to an office, as they are that the duties of the office shall be performed, and the rights depending upon.

their performance secured and protected." *Attorney General* v. *Crocker*, 138 Mass. 214, 222.   In pursuance of this general public policy G. L. (Ter. Ed.) c. 30, § 8, provides expressly that a "public officer appointed for any term by the governor, with or without the advice and consent of the council, shall hold his office during the term for which he is appointed and until his successor in office has qualified, unless he is sooner removed in accordance with law."   This statute was applicable to the office held by Whipple and would have been applicable to him if the term for which he was appointed had come to an end by reason of lapse of time.   There is some support for the interpretation of this language as applicable to an officer whose term of office — as in the case of Whipple — had been cut short by the taking effect of his resignation (see *Badger* v. *United States*, 93 U. S. 599), although I am not inclined to interpret the statute in this way.   Even in the absence of such a statute the same general public policy obtains.   In *Opinion of the Justices*, 275 Mass. 575, 579, it was said: "It is a general principle of expediency in the absence of any binding regulation that an officer may continue after the expiration of his term to exercise the duties of his position until his successor is selected and qualified.   This is simply a holding over for convenience and confers no right for any defined period.   It is not a part of the necessary tenure of his office.   It prevents interruption in the performance of the public business.   It commonly is in the interests of the general welfare.   Whether a person thus holding over is a de facto or a de jure officer is not germane to the questions presented and need not be considered."

Whether or not the principle stated in this *Opinion of the Justices* is an application of the doctrine of de facto officers, this doctrine itself is, in part at least, based upon the general public policy, "in the interests of the general welfare," of preventing "interruption in the performance of the public business."   No reason appears why this doctrine should not apply to the case of an officer whose resignation has taken effect but who continues to act as an "actual incumbent" of the office "in the performance of its duties."   The

ground in general public policy for the application of the doctrine of de facto officers — subject to its ordinary limitations — to the case of an officer whose resignation has taken effect but whose successor has not been appointed would seem to be as great as for the application of the statutory or analogous principle — perhaps somewhat broader in scope — to the case of an officer whose term has expired by lapse of time and whose successor has not been appointed. There is no greater likelihood of harm resulting from action of an officer whose resignation has taken effect than from action of an officer whose term of office has expired by lapse of time. In either event the remedy for any possible harm lies in the hands of the appointing power — the appointment of a successor.

I can see no justification for a general principle that would take the case of an officer whose resignation has taken effect out of the doctrine of de facto officers. On the contrary I think that this doctrine is particularly adapted to the case of such an officer. The present proceeding is an apt illustration of the wisdom of applying the doctrine of de facto officers to such an officer. In this case, on a petition to the department of public works filed on November 30, 1944, for the license here in question, notice was given of a hearing to be held on December 12, 1944, and such a hearing was held at which testimony and statements were heard. Whipple participated in this hearing as he had authority to do. His resignation did not take effect before midnight December 14, 1944. The hearing did not culminate in a decision until December 15, 1944, when the license was granted. Clearly, if the license was invalid by reason of the participation of Whipple in granting it, the hearing upon the petition therefor became abortive and, if the petition is pressed, a new hearing will be required. The avoidance of such an interruption "in the performance of the public business" is one of the grounds of the doctrine of de facto officers. That doctrine should not be denied application to the present case merely because of the particular way in which Whipple's de jure tenure came to an end. So far as *Loughran* v. *Mayor & Aldermen of Jersey City,*

86 N. J. L. 442, is inconsistent with what is here said, it should not be followed.

No other facts disclosed by the record are necessarily inconsistent with Whipple's having been at least a de facto officer at the time he participated in the granting of the license. It may perhaps be suggested that the period after his resignation took effect and before the granting of the license was not long enough for him to acquire the standing of a de facto officer. This period would not have exceeded one day, but is not shown to have been less. A course of conduct by Whipple acting as the "actual incumbent" of the office "in the performance of its duties" after as well as before the license was granted might have a bearing upon his standing at the time the license was granted. It would be somewhat extraordinary, if a person so conducted himself over a considerable period of time, that his acts in the earlier part of the period would be invalid because his conduct had not then become sufficiently "notorious," but that his acts in the later part of the period would be valid. But even a period of one day or less would not necessarily be too short for. Whipple to acquire the standing of a de facto officer. In *Moloney* v. *Selectmen of Milford,* 253 Mass. 400, 405–407, the period of time in which such a standing was acquired was much shorter. Three persons, including one Fitzsimmons, were declared elected selectmen "in the early morning of March 3, 1925." A petition for a recount "was filed during the forenoon of March 3." "The three declared elected selectmen held a meeting on the afternoon of March 3, at which time they all knew that the petition for a recount had been filed." At that meeting one Moloney "was appointed chief of police by a majority vote, when much other business . . . also was transacted." The recount, completed on March 7, showed that Fitzsimmons had not been elected selectman. On a petition by Moloney, who meanwhile had been removed from office, to be reinstated, it was held that "Fitzsimmons was at least a de facto selectman when the petitioner was elected, and the petitioner's election as chief of police is not here open to successful attack." The record in the present case does not

show that the period between the taking effect of the resignation of Whipple and the granting of the license was so short that he could not have been a de facto officer when he participated in granting the license.

It is my conclusion, for the reasons herein stated, that the petitioner, which had the burden of proving that the respondents were without jurisdiction to grant the license, has failed to make such proof, since it has failed to show that Whipple, at the time he participated in granting the license, was not at least a de facto officer. The result of this conclusion would be that the license is not invalid and should not be quashed. Mr. Justice Dolan joins in this dissenting opinion.