CITY OF LAWRENCE *vs.* COMMISSIONERS OF PUBLIC WORKS.

Essex.    May 8, 1946. — June 5, 1946.

Present: FIELD, C.J., DOLAN, RONAN, & WILKINS, JJ.

*Certiorari. Practice, Civil,* Appeal. *Public Works. License. Public Hearing. Evidence,* At public hearing.

Upon an appeal under § 1D, inserted in G. L. (Ter. Ed.) c. 213 by St. 1943, c. 374, § 4, from final judgment in a certiorari case, where there was included in the return a complete stenographic transcript of the hearing before a department whose action was involved, and the exhibits, it was the duty of this court to decide the case according to its own judgment, drawing its own inferences, and itself to find facts, which might be contrary to those previously found where it was convinced that the facts previously found were plainly wrong.

A finding by the department of public works, on evidence reported, that methods of laying and maintaining a proposed pipe line for transportation of finished oil products beneath the Merrimack River five miles

above the intake works of the water supply of the city of Lawrence would be much more than merely adequate to guard against breaks was warranted although no witness testified that he would guarantee that the pipe would not break; and the department was not plainly wrong in not finding that the pipe line would be a menace to the health of the inhabitants of the city.

Circumstances of a hearing by the department of public works of a petition for a license to lay a pipe line under the Merrimack River five miles above the intake works of the water supply of the city of Lawrence showed that a certain remark by a commissioner was not a ruling by the department limiting the scope of the hearing to questions of navigation and flood control and excluding questions of public health, and that the city was not harmed by the commissioner's remark.

No harmful error appeared in certain rulings of the department of public works in admitting certain exhibits and testimony relevant to the subject matter being heard at a hearing on a petition for a license to lay an oil pipe line across the Merrimack River.

PETITION, filed in the Superior Court on November 27, 1945, for a writ of certiorari.

The case was heard by *Forte*, J., by whose order judgment affirming the action of the respondents was entered. The petitioner appealed.

*J. P. Kane*, City Solicitor, for the petitioner.

*R. Clapp*, Assistant Attorney General, for the respondents.

WILKINS, J.  This is a petition for a writ of certiorari to quash the action of the department of public works in granting a license under G. L. (Ter. Ed.) c. 91, §§ 12 and 18, to the Colonial Beacon Oil Company to lay and maintain a four inch steel pipe line in the Merrimack River in the towns of Andover and Dracut.  From a final judgment unfavorable to it the petitioner appeals.  G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.

The return shows that on September 28, 1945, the petition of the Colonial Beacon Oil Company (hereinafter called the company) for a license to lay and maintain the pipe was filed with the department, which gave notice of a hearing thereon not only to the towns of Andover and Dracut, which was all that was required by G. L. (Ter. Ed.) c. 91, § 18, but also to other municipalities, including the city of Lawrence (hereinafter called the city), and by publication in newspapers.  See *Lawrence* v. *Commissioners of Public Works*, 318 Mass. 520, 522.  A hearing was duly held

before the department at which evidence was introduced by the oil company, by the city, and by others, and various persons were recorded in favor of or in opposition to the granting of the license. On November 20, 1945, there was issued a license, signed by the commissioner and the two associate commissioners constituting the department. A complete stenographic transcript of the hearing before the department and the exhibits introduced at the hearing are included in the return.

It was open to the city to contend in the court below that the evidence was as matter of law insufficient to warrant the action of the department. G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1. And the same contention is now open in this court upon appeal, "subject to" the provisions of G. L. (Ter. Ed.) c. 214, §§ 19, 22–28, as amended, relative to appeals in equity suits. G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4. *Murphy* v. *Third District Court of Eastern Middlesex*, 316 Mass. 663, 667. There is thus made applicable to the case at bar the familiar equity rule that it is our duty to decide the case according to our own judgment, to draw our own inferences, and ourselves to find facts, which may be contrary to those previously found where we are convinced that they are plainly wrong. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178, and cases cited. *Shattuck* v. *Wood Memorial Home, Inc.*, *ante*, 444, 445, and cases cited.

The river at the point in question is five hundred five feet wide, and it is proposed to bury the pipe at least two feet below the bed of the river in a location about five miles above the intake works of the water supply of the city. It is planned to use the pipe line for kerosene, gasoline, domestic heating oil, and diesel oil, which are finished oil products. No crude oil is to be carried. In the winter of 1943–1944 the company, after a study as to the best method to move petroleum from the coast to its inland distribution points, decided to proceed with a project comprising a six inch pipe line from Everett to Waltham and thence to West Boylston and a four inch pipe line from Waltham to Dracut. The company obtained the approval of the Department of the

Interior and of the Office of Defense Transportation, received priorities for materials from the War Production Board, obtained permission from the "Massachusetts District Commission" to pass under the metropolitan park system, secured a permit from the department of public works to proceed up the Concord turnpike about four miles, obtained permission to cross various lands from the department of mental health, Massachusetts State College, certain departments of the Federal government, and the municipalities of Everett, Cambridge, Arlington, Belmont, Medford, Lexington, Waltham, Burlington, Billerica, Tewksbury, and Dracut, and was given permission by the department of public works and the War Department to cross the Malden, Mystic, and Merrimack [1] rivers, and by the department of public works to cross the Shawsheen River. The department of public health on November 13, 1944, notified the city that in its opinion if its recommendations were carried into effect the construction of the pipe line in the location then proposed and tested and maintained as proposed would not constitute a hazard to the city's water supply. On October 9, 1945, the department of public health voted to the same effect with reference to the location now under consideration, and so advised the department of public works. The pipe line has been completed to Waltham, connecting with another line, and from Waltham to Tewksbury except for a distance in Lexington, and is in operation from Everett to West Boylston. The area in the vicinity of Dracut, Lowell, and Andover is now served by trucks by way of Haverhill. A pipe line is a modern, efficient way of transporting petroleum products from a refinery to centers of distribution. Its advantages include economy and the elimination of large trucks on highways. This method of transportation is in the best interests of the communities.

It is not necessary to set out in detail the methods by which the pipe is to be laid and maintained. It is enough to say that the evidence presented was ample to warrant a

---

[1] The license to cross the Merrimack River by the department of public works was dated December 15, 1944, and was quashed by this court. *Lawrence* v. *Commissioners of Public Works*, 318 Mass. 520.

finding that they would be much more than merely adequate to guard against breaks.   The department could have accepted as true expert testimony that the crossing had been designed to prevent, in the best manner known to science, all of the causes of trouble in a river crossing.   The city complains that the company had no one as a witness who would guarantee that the pipe would not break.   This is a standard of perfection seldom attained in human affairs, and cannot be made the test here.   The city called no witnesses on methods of construction or maintenance of pipes. Stated most conservatively, the department was not plainly wrong in not accepting the contention of the city that the pipe line would be a menace to the health of the inhabitants of the city.

The city argues, however, that the commissioner, who presided, limited the hearing to the question of navigation and flood control.   We state the background of this contention.   There just had been received in evidence a copy of an extract from the record of a meeting on October 9, 1945, of the department of public health, authenticated by the secretary of the department, who was the officer in charge of the record.   The copy, which was competent evidence equally with the original (G. L. [Ter. Ed.] c. 233, § 76), read: "Question of a proposed oil pipeline to be constructed by the Colonial Beacon Oil Company across the Merrimack River at a new location, approximately five miles above the intake works of the water supply of the city of Lawrence, was presented and after consideration of the report of the committee on sanitary engineering, as read by Mr. Tighe, the chairman, upon motion made and duly seconded, it was voted that, based upon the information available, the oil pipeline . . . if installed as shown on a [described] plan . . . tested and maintained as proposed, will not constitute a hazard to the water supply of the city of Lawrence provided the recommendations contained in the communications of the department, dated November 13, 1944, to the department engineers of the city of Lawrence, are carried out.   And it was further voted that the State department of public works be so advised by the

commissioner of public health." The following colloquy then occurred: THE CITY SOLICITOR: "I think, Your Honor, we should have the report of Mr. Tighe and the information upon which they based this. It is a copy." THE COMMISSIONER: "We haven't the report here. We are not concerned with the public health feature of this proposition. We are concerned simply with navigation and flood control. You can take up any public health feature with the department of public health." THE CITY SOLICITOR: "If we are not concerned with public health, I would object to the admission of it." THE COMMISSIONER: "It is a report that came to this department and I will admit it." THE CITY SOLICITOR: "All right, save my rights." It is apparent that this was not a ruling of the department limiting the scope of the hearing, but was a comment of one member made in connection with the admission of a public record, and was so regarded at the time by everyone. A substantial portion of the testimony later received pertained to public health. The city's only expert, a consultant sanitary engineer, testified at length on this subject. The company called witnesses on this issue. The license ultimately granted by the department was subject to various conditions which were recommendations of the department of public health contained in the letter of November 13, 1944, referred to in the vote. It is manifest that the city was not prejudiced by the remark. Nor was there error in the admission in evidence of the record of the vote. G. L. (Ter. Ed.) c. 66, § 6; c. 111, § 159, § 5, as amended by St. 1945, c. 615. See *New England Box Co.* v. *C & R Construction Co.* 313 Mass. 696.

Immediately after the foregoing colloquy there were received in evidence over the city's objection copies, authenticated by the secretary of the department of public health, of the letter of November 13, 1944, from the commissioner of public health to John W. McCarthy, director of engineering of the city, and of a letter of October 9, 1945, from the commissioner of public health to the commissioner of public works. The objection was not based on the use of copies. The first letter was incorporated by reference in the vote of October 9, 1945, and was admissible, as in sub-

stance a part of the record of the vote, in order to show the recommendations on which it was expressly based. The second letter, which was sent pursuant to the vote, in effect added nothing to the evidence of the vote and of the first letter. It cannot be said that the city was in any way prejudiced by it. *Runels* v. *Lowell Sun Co.* 318 Mass. 466, 469–470, and cases cited.

The city was not prejudiced by other rulings on evidence which it now asserts were erroneous. A permit to cross the Merrimack River, expiring December 31, 1947, issued December 19, 1944, by the War Department to the company, was admitted with the city's assent. The city now contends that it objected on the ground that the permit was granted in connection with the license previously quashed by this court. In any event, there was no harm to the city. There likewise was no objection, valid or otherwise, to the admission in evidence of a deed of December 28, 1944, to the company of a parcel of land in Dracut, offered solely to show the date, or to receiving the opinion of the expert witness Shaw, the cross-examination of whom was not unreasonably limited. There was no error in receiving the opinion evidence of the witness Rhodes. The same is true as to the testimony of the witnesses Chase and Mackley, who in the discretion of the department might be permitted to testify in rebuttal as to matters relating to the company's direct case. *DiAngelo* v. *United Markets Inc.*, ante, 143, 146.

We have considered all the contentions of the city, and are satisfied that there is no merit in any of them.

*Judgment affirmed.*